ATTORNEYS FOR APPELLANT ATTORNEYS FOR APPELLEE

Gary S. Germann Pamela Carter

Portage, Indiana    Attorney General of Indiana

I. Alexander Woloshansky Arthur Thaddeus Perry

Merrillville, Indiana Deputy Attorney General

Indianapolis, Indiana

In The

INDIANA SUPREME COURT

OBADYAH BEN-YISRAYL, )

f/k/a CHRISTOPHER D. PETERSON, ) 

Defendant-Appellant, )                 

)

v. ) 64S00-9103-DP-00229 

)

STATE OF INDIANA, )

Plaintiff-Appellee. )

                          ________________________________________________  

APPEAL FROM THE PORTER SUPERIOR COURT

The Honorable Thomas W. Webber, Judge

Cause No. 64D02-9102-CF-022

                        _________________________________________________

On Direct Appeal

DICKSON, J.

The defendant-appellant, Christopher D. Peterson, was convicted of two counts of murder
(footnote: 1) and two counts of felony murder
(footnote: 2) for the intentional killing and robbery of Harchand Dhaliwal (Counts 1 and 2) and Marie Meitzler (Counts 3 and 4).
(footnote: 3)  
In accordance with the jury recommendation, the trial court ordered that a death sentence be imposed.

On December 15, 1990, Marie Meitzler, a Portage, Indiana, motel clerk was killed as the result of a shotgun wound to the neck and $467.00 was missing from the cash register.  The next day, Harchand Dhaliwal, an attendant at a nearby gas station, was killed by a shotgun blast to the head and $327.55 was missing.  The defendant subsequently confessed to these murders. 

The defendant presents twenty claims in this direct appeal, which we regroup and address as follows:  (1) 
severance of offenses
;
(footnote: 4)  (2) change of venue
;
(footnote: 5)  
(3)
 admissibility of evidence of the defendant’s other crimes
;
(footnote: 6)  
(4) 
prosecutor’s comments during closing argument
;
(footnote: 7)  (5) 
jury instructions
;
(footnote: 8) 
 (6) sufficiency of evidence of statutory aggravating circumstances at the penalty phase;
(footnote: 9)  (7) 
admissibility of defendant’s statements
;
(footnote: 10) (8) search and seizure;
(footnote: 11) and (9) appropriateness of the death sentence.  We affirm.

1.    Severance of Offenses

The defendant was charged on February 14, 1991, with two counts of murder and two counts of felony murder stemming from the shotgun murder and robbery of Harchand Dhaliwal on December 13, 1990, at his workplace and the shotgun murder and robbery of Marie Meitzler on December 15, 1990, at her workplace.  The defendant contends he was entitled to a severance of the charged offenses as a matter of right.  He also contends that, in the alternative, the denial of severance was an abuse of the trial court’s discretion.

Two statutory provisions are at issue here:  
Indiana Code Sections 35-34-1-9(a) and 35-34-1-11(a).

Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses: 

(1) are of the same or similar character, even if not part of a single scheme or plan;  or 

(2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.”

Ind. Code
 § 35-34-1-9(a) (1993). 

Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to a severance of the offenses.  In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant’s guilt or innocence of each offense considering:

(1) the number of offenses charged;

(2) the complexity of the evidence to be offered;  and

(3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Ind. Code
 § 35-34-1-11(a) (1993).

Interpreting these statutes, we have required severance of offenses as a matter of right under subsection 11(a) only when the 
offenses are joined 
solely
 because of the reason listed in subsection 9(a)(1), i.e., that the offenses are of the same or similar character.  
See
 
Brown v. State
, 650 N.E.2d 304, 305 (Ind. 1995).  However, when the offenses are joined under subsection 9(a)(2)
, 
the 
court must grant
 a severance only if it determines that it is “appropriate to promote a fair determination of the defendant’s guilt or innocence,” based on subsections 11(a)
(1) through (3). 
 
Conner v. State
, 580 N.E.2d 214, 219 (Ind. 1991), 
cert. denied
, 503 U.S. 946, 112 S.Ct. 1501, 117 L.Ed.2d 640 (1992).  

Under subsection 9(a)(2)
, offenses may be sufficiently “connected together” to justify joinder if the State can establish that a common 
modus operandi
 linked the crimes and that the same motive induced that criminal behavior.  
Davidson v. State
, 558 N.E.2d 1077, 1083 (Ind. 1990).  
In this case, the crimes for which the defendant was charged both have the same 
modus operandi
.  Both shootings involved victims who were clerks and were killed at their place of business while working alone between the hours of 6:00 p.m. and 8:00 p.m.  The assailant in both shootings was identified as someone who drove a white Nissan Sentra automobile.  In both killings, the victims’ cash registers were emptied.  The cause of death for both victims was a shotgun blast to the head, at close range, from a .12 gauge shotgun.  Winchester AA 8 shotgun waddings were also found at both crime scenes.  
Both shootings were committed in the City of Portage, two days apart.  
As noted, the crimes also had the same motive: robbery.  
Because these facts are sufficient to show a “series of acts connected together,” 
they were not joined solely because they were 
of a “same or similar character
” and
 severance was not mandated as a matter of right.  Accordingly, 
“whether to sever multiple charges is a matter within the trial court’s discretion, taking into account the three factors listed in [subsections 11(a)
(1) through (3)], 
and a denial of severance will be reversed only upon a showing of clear error.”  
Id.
 

The defendant concedes he cannot establish that the number of offenses charged or the complexity of the evidence offered subjected him to any prejudice, as required under 
Indiana Code Section 35-34-1-11(1) and (2)
.  He has similarly presented no evidence that the jury was unable to distinguish the evidence and apply the law intelligently as to each offense.  The trial court did not abuse its discretion in refusing to sever the offenses for trial.

2.    Change of Venue

The defendant contends that the record relating to his Motion for Change of Venue is insufficient to permit adequate appellate review.  Alternatively, he argues that, to the extent that review is possible, the trial court abused its discretion in denying his motion. 

On August 25, 1994, the defendant sought relief in this Court for a new trial, alleging portions of the trial transcript were indecipherable.
(footnote: 12)  In response, this Court ordered the following:

As to the claim that the faulty transcript renders appellate review impossible, Ind. Appellate Rule 7.2(c) governs.  That rule provides for reconstruction of the record where material is omitted from the record or where the record does not accurately represent the actual trial court proceedings.  It provides “[i]ncompleteness or inaccuracy of the record of proceedings shall not constitute a ground for dismissal of the appeal or preclude review on the merits.”  App.R 7.2(C)(2).  

Pursuant to App.R 7.2(C), the Court ORDERS the following.  The trial court judge, deputy prosecutor and defense counsel who participated in Appellant’s trial in this cause shall, to the best of their abilities, reconstruct the actual testimony or arguments not accurately depicted in the trial transcript filed in this Court.  To the extent that such testimony cannot be reconstructed, the trial court judge, deputy prosecutor and defense counsel shall report in writing the thrust of the inaccurately transcribed testimony or arguments to the best of their recollection.  
To the extent that their memories of the actual testimony or arguments are inadequate to reconstruct or outline the testimony or arguments, the trial judge, deputy prosecutor and defense counsel shall report in writing to this Court whether such testimony or arguments raise any material issue or relate to any error raised in Appellant’s motion to correct errors.

The process outlined above will be conducted with respect to each apparent error in the trial transcript contained in the record of proceedings and in any transcripts submitted as part of any supplemental records.  
This task shall be completed and the results submitted to this Court on or before February 1, 1995.
  All further appellate briefing in this case is stayed until further order of this Court. . . .

Indiana Supreme Court Order,
 dated Oct. 6, 1994 (emphasis added).

On May 8, 1995, we removed the stay on briefing, stating, “On October 6, 1994, this Court issued an Order staying briefing in this case until supplementation of the Record of Proceedings was completed.  This Court now deems the Record of Proceedings filed and supplementation complete.”  
Indiana Supreme Court Order,
 dated May 8, 1995.

The defendant now alleges that portions of the trial transcript are still indecipherable or missing.  Our order of October 6, 1994, made it clear that, if there were any problems with the reconstruction of the record, they were to be brought to this Court’s attention, 
in writing
, before February 1, 1995, and certainly before we removed the stay on May 8, 1995, allowing appellate briefing to continue.  It was not until four months after the date this Court set as the final date for completing the reconstruction process, and almost one month after this Court deemed the process complete, that the defendant made any mention of his perceived problems with the reconstruction process.
(footnote: 13)
 The defendant now contends there were problems with the reconstruction process or result.  However, he was ordered to present those to this Court while the briefing period was stayed or at the very least he should have requested an extension in which to continue the reconstruction process.  We formally resolved the reconstruction of the record on May 8, 1995, without any objections from the defendant.  He has therefore forfeited his claim regarding the sufficiency of the record.
(footnote: 14)

3.    Admissibility of Evidence of the Defendant’s Other Crimes  

As proof of the defendant’s identity, the State introduced evidence that the defendant was also responsible for the December 18, 1990, shotgun killings of Eli Balovski and George Balovski.  The defendant had been charged with these crimes, but was not tried and convicted of these murders until after he had been convicted of the murders in the case at bar.
(footnote: 15)  The defendant argues that the admission of this evidence was error.  However, even if the evidence was erroneously admitted, which we do not decide, such error would be harmless. 

Ignoring any reference to the Balovski murders, the evidence presented to the jury in this case was overwhelming.  First and foremost, the jury was presented with the defendant’s voluntary confession to police.  The State also presented testimony that, prior to his arrest, the defendant admitted to an acquaintance that he had committed the murders.  The defendant acknowledged his possession of a .12 gauge sawed-off shotgun, which was identified as the same weapon used to commit the murders.  Several witnesses testified to seeing the shotgun in the defendant’s possession.  The shotgun was found in a closet in the bedroom which was previously occupied by the defendant.  Three other witnesses testified they saw the defendant or his car either at the murder scene or in close proximity thereto.

In determining whether the erroneous admission of extrinsic offenses is harmless error, we look to whether the error had substantial influence on the jury or whether one is left in “grave doubt.”  
Hardin v. State
, 611 N.E.2d 123, 132 (Ind. 1993) (internal citations omitted)
.
  
See
 Ind.Trial Rule 61.
(footnote: 16) 
 In light of the above evidence, we do not find the jury would have been “substantially influenced” by the possible erroneous admission of evidence relating to the Balovski murders, nor are we left in “grave doubt” as to the influence such admission may have had on the verdict.  Any error was therefore harmless.

4.    Prosecutor’s Comments During Closing Argument

The defendant contends that reversible error occurred during the prosecutor’s closing argument because the prosecutor directly commented on the defendant’s decision to exercise his constitutional right not to testify.  He also argues that the trial court erred in refusing to admonish the jury.

While addressing a separate objection by the defendant 
at a bench conference during trial
, the prosecutor informed the judge and the defendant that he intended to tell the jury there had been no evidence presented to explain why the defendant would confess to a crime he didn’t commit.  
The 
defendant objected and the prosecution responded by stating they were not commenting on the defendant’s failure to testify, but that they were stating there had been no evidence showing why someone would confess to a crime they did not commit.  The trial court, seeking to clarify what the prosecution meant by “evidence,” asked if the prosecution was referring to coercion, to which the prosecution responded, “Yes, [it] could go to duress, anything.”  Record at 5566-67.  The trial court then allowed the prosecution to proceed, stating, “You can comment that there is no evidence,” but emphasized that the prosecution could not “comment in any fashion on . . . the defendant’s failure to testify.”  Record at 5563-64.  The prosecutor continued his closing argument and reminded the jury that he had told them in his opening statement that the defendant confessed to killing the four victims with his shotgun.  He stated it was self-evident “that no one freely and voluntarily confesses to a murder unless they’re guilty.” Record at 5568.  He then challenged defense counsel
(footnote: 17) to explain why a person would voluntarily confess to a crime they did not commit.

The defense objected and sought a mistrial.  The trial court reserved its ruling until it could review the record in its totality.  The State continued and proceeded to tell the jury that “nobody will ever confess to a murder freely and voluntarily unless they commit it.  That’s why we have spent so much time, so much effort in explaining that the confession . . . was freely and voluntarily given.”  Record at 5570.  The prosecution then summarized the evidence it had introduced to show the confession was freely and voluntarily given.  The prosecution concluded its argument by stating that the defense would try to show the defendant was coerced into confessing, but that the prosecution believed they had proven it was voluntary beyond a reasonable doubt.  Following closing arguments, the trial court instructed the jury:

[A] person charged with the commission of a crime cannot be compelled to testify and is under no duty or obligation to testify.  The fact that the defendant did not testify raises no presumption of any kind against him.  It shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of the defendant. 

Second Supp.Record at 16.  After reviewing the record and hearing arguments from both sides, the trial court found that the comments were not improper and denied the defendant’s request for a mistrial.  The defendant then asked for an admonishment, to which the trial court responded that the instructions already given were more relevant than an admonishment, which would only call attention to what the court had just told them to disregard.

When a defendant’s motion for mistrial is denied, reversible error exists only if that denial subjects the defendant to grave peril.  
Taylor v. State
, 587 N.E.2d 1293, 1299 (Ind. 1992).  Grave peril is measured by the probable persuasive effect on the jury.  
Id.
 On appeal, the trial court’s decision is reviewed only for an abuse of discretion.  
Steele v. State
, 672 N.E.2d 1348, 1350 (Ind. 1996).  

We have recently addressed this issue in 
Moore v. State
, 669 N.E.2d 733 (Ind. 1996).  Analyzing both the historical and contemporary treatment of a prosecutor’s comments on the defendant’s failure to testify, we held that: “The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant’s silence.”  
Id.
 at 739.  
Moore
 makes clear that direct and indirect references to the defendant’s failure to testify are not, 
per se
, improper.  
Id.
   We therefore look to whether the prosecutor’s comments in this case could reasonably be interpreted by the jury as an invitation to draw an adverse inference from the defendant’s silence.

The jury in this case could not reasonably have interpreted the prosecutor’s comments as suggestion to infer guilt from the defendant’s silence.  While the prosecutor could have been more articulate, it is clear that he was responding to any possible implications that the defendant’s confession was less than voluntary.  His “challenge” to defense counsel was made to illustrate that the only reason a defendant would confess to a crime he did not commit would be because of coercion or duress.  He then pointed out that the State presented substantial evidence that the confession was not the result of coercion or duress.  Consequently, he was arguing that the confession should be taken by the jury as direct evidence of the defendant’s guilt.  The theme of the State’s argument was a challenge directed at defense counsel which pointed out the uncontradicted nature of the State’s evidence of voluntariness and invited defense counsel to explain, in its closing argument, any contrary conclusions.  

Because the jury could not have reasonably interpreted the State’s argument as an impermissible suggestion, the probable persuasive effect on the jury does not rise to the level of grave peril.  Therefore, the prosecutor did not commit reversible error and the trial court did not abuse its discretion in refusing to grant a mistrial and refusing to give an admonishment.
(footnote: 18)

5.    Jury Instructions

The defendant argues that fundamental and reversible error occurred as the result of three jury instructions given by the trial court at the guilt and penalty phases of the trial.  

The defendant first claims that the instruction on accomplice liability was erroneous because no evidence of an accomplice was introduced at trial.  This Court, in 
Swoaks v. State
, 519 N.E.2d 149 (Ind. 1988), was faced with an analogous situation.  The defendant in 
Swoaks
 argued the trial court should not have given an accomplice instruction because he was actually charged as a principal.  
Id.
 at 151.  The 
Swoaks
 court found that some evidence showed that an accomplice was also involved in the crime for which the defendant was charged as a principal.  
Id.
  We stated:

In view of the fact jurors not totally familiar with the law might have been persuaded that if appellant were only an accomplice he could not be convicted as a principal, it was entirely proper for the trial court to give the instruction that an accomplice could be charged as a principal.

Id.
  

The trial court in this case found that the testimony of two witnesses, Barbara Wright and Bob Bailey, raised the inference that the defendant had been accompanied by one to two other persons on the night of the murder.  Furthermore, during his discussion of another issue in his appellate brief, the defendant concedes as much.
(footnote: 19)  The instruction on accomplice liability was proper.

As to the remaining instructions challenged by the defendant on appeal, the defendant failed to object and, thus, his claim of error was not properly preserved at trial.  When an issue is not properly preserved at trial, this Court will reach the merits of the case only if the error is fundamental.  
Beasley v. State
, 643 N.E.2d 346, 348 (Ind. 1994).  To qualify as fundamental error, the defendant bears the burden of proving that “the error [was] a substantial blatant violation of basic principles rendering the trial unfair to the defendant.”  
Hart v. State
, 578 N.E.2d 336, 337 (Ind. 1991).

The defendant contends that the following instruction was fundamental error: “You may also consider the [prior inconsistent] statements as evidence in determining the guilt or innocence of the defendant of the crime charged.” 
 He is correct that, in 
Modesitt v. State
, 578 N.E.2d 649, 654 (Ind. 1991), we modified the applicable evidentiary rule, overruling the case upon which this jury instruction was patterned:  
Patterson v. State
, 263 Ind. 55, 324 N.E.2d 482 (1975). 
 
It would be hard to imagine a situation in which such error could be fundamental.  Furthermore, in this case, t
he defendant has not identified any 
prior inconsistent statements in the record which may have been affected by this jury instruction.
(footnote: 20)  We are not persuaded that the alleged error was a substantial blatant violation rendering his trial unfair.  His 
claim of fundamental error fails.

He also contends that the inclusion of
 
an instruction on aggravation and mitigation during the penalty phase
 was reversible as fundamental error because the instruction provided: 
 “The law provides for the penalty of death upon conviction for the crime of murder under the following circumstances:  The defendant . . . has committed another murder at any other time.”  
Record at 49.  During the guilt phase, the State had introduced evidence of the murders of Harchand Dhaliwal and Marie Meitzler, the victims of the charged offenses in this case, as well as evidence that he was responsible for the separate murders of Eli and George Balovski.
(footnote: 21)  
See supra
 text accompanying note 15.  The defendant contends that, during the penalty phase, 
the jury could have impermissibly considered the Balovski murders as the “another murder at any other time” referenced by the jury instruction.  Supplemental Brief of Appellant at 11-12.

However, at no point during the penalty phase were the Balovski murders mentioned.
  Further, we evaluate whether the instructions 
as a whole
 sufficiently informed the jury of the murders they were to consider as statutory aggravating circumstances.  
Accord 
 
Beasley
, 643 N.E.2d at 348.  The penalty phase instructions given by the court and read to the jury before the instruction challenged here included an instruction that the State was 
seeking the death penalty by alleging the existence of at least one aggravating circumstance:

Count 7:  The State of Indiana . . . now seeks the death sentence for [the defendant], based on the existence of the following aggravated circumstance:

(1) On or about the 13th day of December, 1990, in the County of Porter, State of Indiana, [the defendant] did murder Harchand Dhaliwal and (a) the defendant . . .
 did commit another murder, to wit: the murder of Marie Meitzler on December 15, 1990.

Count 8:  The State of Indiana . . . now seeks the death sentence for [the defendant], based on the existence of the following aggravated circumstance:

(1) On or about the 15th day of December, 1990, in the County of Porter, State of Indiana, [the defendant] did murder  Marie Meitzler and (a) the defendant . . . 
did commit another murder, to wit: the murder of Harchand Singh Dhaliwal on December 13, 1990.

Second Supp.Record at 35; Record at 215, 216 (emphasis added).  In addition, following the final penalty phase instructions, the trial court again read to the jury the amended charging information, which contained the same language as the instruction above.  The instructions provided the jury with proper guidance as to which murders they were to consider in finding the presence of statutory aggravating circumstances.  No error was committed.

6.    Insufficient Evidence of Statutory Aggravator for the Death Penalty

Following the defendant’s conviction for murder and felony murder, the penalty phase began and the State advised the trial court that it intended to rest without offering any 
new
 evidence, informing the jury 
that:

The court instructed you that you can consider all of the evidence in the sentencing phase.  All the evidence that came in during the trial phase.  The State will not submit any evidence in the penalty phase.  We are going to rely upon all of the evidence that you have already received in making your determination as to whether or not the State has proved beyond a reasonable doubt one of those aggravating factors when this case is concluded.

Record at 5700.  The defendant does not contend that, considering the totality of evidence in the guilt phase
, the evidence of aggravating circumstances was insufficient.  Rather, t
he defendant contends only that, because the State failed to offer any evidence 
of a statutory aggravating circumstance
 at the penalty phase, it failed to prove the existence of an aggravator beyond a reasonable doubt as required by Indiana Code Section 35-50-2-9(a).  The State responds by arguing that, although a motion to incorporate the evidence presented at the guilt phase “has become routine in capital cases,” there is no authority 
requiring
 such incorporation.  Brief of Appellee at 14.  Indiana’s death sentencing statute provides, in pertinent part:

If the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing. . . . The jury or the court 
may consider all the evidence introduced at the trial stage of the proceedings
, together with new evidence presented at the sentencing.

Ind. Code
 § 35-50-2-9(d) (1993) (emphasis added).  

The jury in the penalty phase was the same jury which had just completed the guilt phase, convicting the defendant of two counts of murder and two counts of felony murder.  The statute expressly allows the jury to consider all the evidence introduced at the guilt phase, and the State specifically asked the jury to do so.  The defendant presents no authority requiring the State to move to incorporate the guilt phase evidence at the penalty phase.  We find no error on this issue.

7.    Admissibility of Defendant’s Statements

The defendant contends that his confession should not have been admitted into evidence because it was the product of both an illegal arrest and an unreasonable delay in taking him before a magistrate, violating the Fourth Amendment to the United States Constitution and Article 1, Sections 11 and 12 of the Indiana Constitution.

The defendant was charged in Porter County with the December 13, 1990, murder of Harchand Dhaliwal, the
 December 15, 1990, murder of Marie Meitzler.  He was also charged in Lake County with 
the 
December 19, 1990, murders of Eli and George Balovski.  These four separate murder charges all arose following the defendant’s arrest on January 28, 1991, and confession on January 30, 1991.  
See
 
supra
 note 15.  Thus, 
the
 facts and circumstances of his arrest and subsequent confession at issue in this appeal are identical to the circumstances we addressed in the defendant’s separate direct appeal for the Balovski murders.  
See
 
Peterson v. State
, 674 N.E.2d 528, 535-39 (Ind. 1996)
, 
petition for cert. filed
 (Oct. 14, 1997)
. 
 We rejected the defendant’s claims in 
Peterson
 and he presents no new argument or factual allegations as to these issues.  Therefore, we find that, for purposes of his federal Fourth Amendment claim, the trial court properly denied the defendant’s motion to suppress his confession.  
Id.
 at 539.

Separate and apart from the federal Fourth Amendment analysis, the Indiana Constitution provides an independent prohibition against unreasonable searches and seizures under Article 1, Section 11.  
Moran v. State
, 644 N.E.2d 536, 540 (Ind. 1994).  Such challenges are analyzed under an independent “reasonableness” standard.  
Id.
  
We are not persuaded that the defendant’s arrest and the delay in taking him to a magistrate were unreasonable under Article 1, Section 11.  

The defendant also claims that his arrest and subsequent delay were unreasonable under Article 1, Section 12 of the Indiana Constitution.
(footnote: 22)  However, the defendant provides no argument or authority for this contention.  The arrest and subsequent delay were not unreasonable under 
the Fourth Amendment to the United States Constitution or under Article 1, Sections 11 and 12 of the Indiana Constitution.

8.   Search and Seizure

The defendant contends that the trial court erred in finding that he could not challenge the search of his mother’s apartment
(footnote: 23) 
and 
that the shotgun seized during the search was in plain view and therefore admissible.

To challenge a search as unconstitutional, a defendant must have a legitimate expectation of privacy in that which is searched.  
Rakas v. Illinois
, 439 U.S. 128, 133-34, 99 S.Ct. 421, 425, 58 L.Ed.2d 387, 394 (1978);  
Livingston v. State
, 542 N.E.2d 192, 194 (Ind. 1989).  
Because the arguments and facts of the search and seizure in this Porter County trial were identical to the arguments and facts of the search and
 seizure which had already been presented in the Lake County trial, “[r]ather than conducting a separate hearing . . . the State and the defense stipulated to the testimony presented in Lake County for the purpose of this Porter County trial.”  Brief of Appellant at 80.  We have recently addressed the defendant’s arguments regarding these search and seizure issues in 
Peterson
, 674 N.E.2d at 535-39, wherein we 
found that the defendant possessed “no reasonable expectation of privacy”
(footnote: 24) and therefore could not challenge the search of his mother’s apartment.  
Id.
 at 533.  Further, in finding that Article 1, Section 11 of the Indiana Constitution was not violated, we held that, “police observation of an item in open view is not a search” and that one of the officers who found the shotgun “simply made a discovery of that which was open to view.”  
Id.
 at 535.  Because t
he defendant presents no new argument or factual allegations, we find that the trial court properly rejected his challenges.

9.   Appropriateness of the Death Sentence

Under the Indiana Constitution, Article 7, Section 4, we have the power to review and revise the sentence of death imposed in this case.  Thus, having found that the trial court committed no reversible error, we address whether, in our judgment, the death sentence is appropriate for this offender and this offense.

In the penalty phase, the evidence regarding the offender
(footnote: 25) included 
testimony that the defendant was generous with friends, driving one friend to and from work weekly because the friend did not have any transportation.  The defendant was described as being non-violent and not abusive in any way
.  He had lost his sixth-month-old child a year before the murders occurred, learning of the child’s impending death while attending his grandfather’s funeral, a man whom he regarded as a father figure.  The mother of his children testified that they had been dating since high school and that he was never violent towards her or anyone else unless they provoked him.  He also helped out her family whenever needed.  His own mother testified that she and the defendant had an extremely close relationship.  She told the jury that he always set a good example for the rest of her children and that he was a good student, graduating from high school and then going into the Marine Corps.  However, the record also contains the mother’s testimony at the suppression hearing that she often searched the defendant’s bedroom looking for drugs the defendant may have hidden and that he was AWOL from the Marines
 when she required that he vacate her apartment the night before he was arrested.

These murders were brutally committed.  U
sing a sawed-off shotgun, the defendant killed
 Marie Meitzler while she was working and removed $467.00 from the cash register.  The next day, he murdered Harchand Dhaliwal with a shotgun blast to the head, taking $327.55.  The defendant confessed to these murders. 
 

Considering both the offender and the offense in this case, we find that the penalty is appropriate.

Conclusion

The trial court is affirmed.

SHEPARD, C.J., and SELBY, and BOEHM, JJ., concur.  SULLIVAN, J., concurs in part and concurs in result with separate opinion.

Attorneys for Appellant

Gary S. Germann

Portage, Indiana

I. Alexander Woloshansky

Merrillville, Indiana

Attorneys for Appellee

Pamela Carter

Attorney General of Indiana

Arthur Thaddeus Perry

Deputy Attorney General

Indianapolis, Indiana

IN THE

INDIANA SUPREME COURT

OBADYAH BEN-YISRAYL,

f/k/a CHRISTOPHER D. PETERSON,

Appellant (Defendant below),

v.

STATE OF INDIANA,

Appellee (Plaintiff below).

)

) Supreme Court No.

) 64S00-9103-DP-00229

)

) 

) 

)

)

)

APPEAL FROM THE PORTER SUPERIOR COURT

The Honorable Thomas W. Webber, Judge

Cause No. 64D02-9102-CF-022

ON DIRECT APPEAL

SULLIVAN,  Justice, concurring in part and concurring in result.

I concur in sections 1 through 8 of the majority opinion.

In this appeal, the defendant does not challenge the constitutionality or the appropriateness of his death sentence or the procedures (except to the extent discussed in issues 5 and 6 above) by which it was imposed.  Nevertheless, a death sentence cannot be imposed in this state “until it has been reviewed by this Court and found to comport with the laws of this State and the principles of our state and federal constitutions.”  
Judy v. State
, 416 N.E.2d 95, 102 (Ind. 1981).  

This Court has regularly upheld the constitutionality of the Indiana death penalty statute, including challenges to the version of the statute in effect at the time these crimes were committed.
(footnote: 1)  
See
 
Peterson v. State
, 674 N.E.2d 528 (Ind. 1996); 
Lambert v. State
, 643 N.E.2d 349 (Ind. 1994), 
aff’d on reh’g
, 675 N.E.2d 1060 (Ind. 1996), 
cert.
 
denied
 117 S.Ct. 2417 (1997); 
Bivins v. State
, 642 N.E.2d 928 (Ind. 1994); 
Roche v. State
, 596 N.E.2d 896 (Ind. 1992).  I find no basis not to reaffirm those decisions.

As to the appropriateness of the death penalty in this case, the statute guides this Court’s review by setting forth standards governing imposition of death sentences.  Following completion of the guilt phase of the trial and the rendering of the jury's verdict, the trial court reconvenes for the penalty phase.  Before a death sentence can be imposed, our death penalty statute requires the State to prove beyond a reasonable doubt at least one aggravating circumstance listed in subsections (b)(1) through (b)(12) of the statute.  Ind. Code § 35-50-2-9.  Here the State supported its request for the death penalty with the following aggravating circumstances: (1) that the defendant intentionally killed Marie Meitzler while committing or attempting to commit robbery, Ind. Code § 35-50-2-9(b)(1)(G); (2) that the defendant intentionally killed Harchand Dhaliwal while committing or attempting to commit robbery, 
id.
; and (3) that the defendant committed multiple murders (Marie Meitzler and Harchand Dhaliwal ), Ind. Code § 35-50-2-9(b)(8).

To prove the existence of these aggravating circumstances at the penalty phase of the trial, the State relied upon the evidence from the earlier guilt phase of the trial (with respect to which the jury had found the defendant guilty of the two murders and the two robberies).  I join the majority in rejecting an attack on the sufficiency of this evidence in section 6 of this opinion.

The death penalty statute requires that any mitigating circumstances be weighed against any properly proven aggravating circumstances.  The majority opinion accurately describes the evidence of mitigation here and I repeat it in the interest of completeness:

In the penalty phase, the evidence regarding the offender
25
 included testimony that the defendant was generous with friends, driving one friend to and from work weekly because the friend did not have any transportation.  The defendant was described as being non-violent and not abusive in any way.  He had lost his sixth-month-old child a year before the murders occurred, learning of the child's impending death while attending his grandfather's funeral, a man whom he regarded as a father figure.  The mother of his children testified that they had been dating since high school and that he was never violent towards her or anyone else unless they provoked him.  He also helped out her family whenever needed.  His own mother testified that she and the defendant had an extremely close relationship.  She told the jury that he always set a good example for the rest of her children and that he was a good student, graduating from high school and then going into the Marine Corps.  However, the record also contains the mother's testimony at the suppression hearing that she often searched the defendant's bedroom looking for drugs the defendant may have hidden and that he was AWOL from the Marines when she required that he vacate her apartment the night before he was arrested.

____________

25
 This Court extensively considered this defendant in our review of his death sentence resulting from the murders of the Balovski brothers.  
See
 
Peterson
, 674 N.E.2d at 542 (involving the imposition of the death sentence in the context of a contrary jury recommendation).

Majority op. at 23-24.

The jury subsequently returned a unanimous recommendation that a sentence of death be imposed.

Once the jury has made its recommendation, the jury is dismissed, and the trial court has the duty of making the final sentencing determination.  First, the trial court must find that the State has proved beyond a reasonable doubt that at least one of the aggravating circumstances listed in the death penalty statute exists.  Ind. Code § 35-50-2-9(e)(1).  Second, the trial court must find that any mitigating circumstances that exist are outweighed by the aggravating circumstance or circumstances.  Ind. Code § 35-50-2-9(e)(2).  Third, before making the final determination of the sentence, the trial court must consider the jury's recommendation.  Ind. Code § 35-50-2-9(e).  The trial court must make a record of its reasons for selecting the sentence that it imposes.  Ind. Code § 35-38-1-3 (1988).  

In imposing the death sentence, the trial court found that the State proved beyond a reasonable doubt the charged aggravating circumstances listed in the death penalty statute — that the defendant had intentionally committed the murder of Marie Meitzler and of Harchand Dhaliwal while committing or attempting to commit robbery and that the defendant had committed multiple murders.  The record and the law supports these findings.  

The trial court found no mitigating circumstances to exist.  My own review of the record leads me to conclude (as it did this Court in the other 
Peterson
 case) that there were mitigating circumstances — defendant’s difficult childhood, his emotional disturbance, his graduation from high school, his service in the Marines, his age, and his caring relationship with his child and her mother.  
Cf.
 
Peterson
, 674 N.E.2d at 543.  As this Court did in the other 
Peterson
 case, I find the mitigating weight warranted for each of these considerations to be in the low range, individually and cumulatively.

As required by our death penalty statute, the trial court specifically found that the aggravating circumstances outweighed the mitigating circumstances.  The trial court also gave consideration to the jury’s recommendation.  The trial court imposed the sentence of death.
(footnote: 2)

Based on my review of the record and the law, I agree that the State has proven beyond a reasonable doubt aggravating circumstances authorized by our death penalty statute and that the mitigating circumstances that exist are outweighed by the aggravating circumstances.  I conclude that the death penalty is appropriate for defendant’s murder of Marie Meitzler and of Harchand Dhaliwal.

FOOTNOTES
1:
Ind.Code
 § 35-42-1-1 (1993).

2:
Id.
 

3:
The State sought the death sentence based on the presence of four aggravating circumstances: two felony murder counts (
Ind.Code
 § 35-50-2-9(b)(1)(G) (1993) (“The defendant committed the murder by intentionally killing the victim while committing or attempting to commit . . . Robbery.”) and the commission of two “other murders” (
Ind.Code
 § 35-50-2-9(b)(8) (1993) (“The defendant has committed another murder, at any time, regardless of whether the defendant has been convicted of that other murder.”).

4:
Defendant’s Issues 7 and 8.

5:
Defendant’s Issue 6.

6:
Defendant’s Issue 9.

7:
Defendant’s Issues 1, 2, and 3.

8: Defendant’s Issue 5.

9:
Defendant’s Issue 4.

10:
Defendant’s Issues 10 and 11.

11:
Defendant’s Issues 12 through 17.

12:
He also alleged that the transcript of the hearing on his Motion for Change of Venue, the final jury instructions, and portions of the transcript relating to the voir dire of four specific jurors were missing from the record.  However, on September 28, 1994, the State responded to the defendant’s request for a new trial by demonstrating that all of the items were available and would be submitted in an Additional Supplemental Record of Proceedings.  Therefore, this Court held that this “supplementation of the record will moot Appellant’s claim regarding the missing documents.”  
Indiana Supreme Court Order,
 dated Oct. 6, 1994.

13:
The defendant referred to potential shortcomings in his petition for an extension of time to file his supplemental brief on May 31, 1995, and provided a more detailed account in his supplemental brief filed on September 7, 1995.

14:
The defendant contends that certain portions of the record were still indecipherable, in particular the individual voir dire of jurors who were not ultimately selected and the testimony of a social psychologist, who spoke of his research on the effect of pre-trial publicity on jurors and juries in general.  Notwithstanding the defendant’s forfeiture, we observe that these missing or indecipherable portions of the record do not raise any “material issues.”  
See
 
Indiana Supreme Court Order,
 dated Oct. 6, 1994 (“defense counsel shall report in writing to this Court whether such testimony or arguments raise any material issue”).  The determination of “materiality” is based upon our standard of review for change of venue: “The mere possibility of prejudice is not enough to gain a change of venue; the defendant must show that jurors were 
unable to set aside
 preconceived notions of guilt and render a verdict based on the evidence.”  
Davidson v. State
, 580 N.E.2d 238, 244 (Ind. 1991) (emphasis added).  The defendant, in his supplemental brief, specifically concedes the “jurors were able to set aside all that they may have previously read or heard about the case.”  Supp. Brief of Appellant at 5.  In light of this standard of review, the testimony of a social psychologist to the contrary would not have been material, nor would the individual voir dire of jurors who were not ultimately selected.  Thus, even had the defendant raised his objections to the reconstruction prior to the conclusion of the reconstruction, his objections were without merit and would not have been successful.  The defendant’s alternative claim that, to the extent that review is possible, the trial court should have granted a change of venue is also without merit.  The defendant’s concession that the jurors were able to set aside all that they may have previously read or heard about the case renders any further discussion unnecessary.

15:
The defendant was arrested on January 28, 1991.  On February 14, 1991, in Porter County, the defendant was charged with the December 13, 1990, murder of Harchand Dhaliwal and the December 16, 1990, murder of Marie Meitzler, the murders at issue in the present case.  In a separate action filed in Lake County, Indiana, on March 1, 1991, the defendant was also charged with the December 18, 1990, shotgun murders of Eli and George Balovski.  The defendant was convicted of the murders at issue in the present case on March 16, 1992.  The defendant was convicted of the Balovski murders on May 4, 1992.  
See
 
Peterson v. State
, 674 N.E.2d 528 (Ind. 1996), 
petition for cert. filed
 (Oct. 14, 1997).

16:
Indiana Trial Rule 61 provides: “No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every state of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.”

17:
While we are aware that the prosecutor initially stated, “Let the Defendant tell you why . . . ,” the prosecution pointed out to the trial court that it had been referring to defense counsel generally as “the defendant” throughout the proceedings--just as this Court has in this opinion-- and was not referring to the defendant, Mr. Peterson, literally.  Record at 5568.  We also note that, as soon as the defendant objected, the prosecutor immediately restated his comment as “defendant’s counsel.”  Record at 5568.  This Court, in 
Moore v. State
, 669 N.E.2d 733 (Ind. 1996), was similarly presented with comments in which the “prosecutor inadvertently mentioned [the defendant’s] decision not to testify and then immediately attempted to correct that slip of the tongue . . . .”  
Id.
 at 739.  In 
Moore
, we held that “a reasonable jury could not have interpreted the statement as a suggestion to infer guilt from Moore’s silence.”  
Id.
 

18:
Even had such comments been in error, they would have been harmless error.  This Court, in 
Moore
, also addressed our harmless error standard in situations such as that presented in this case: “[W]here a prosecutor makes an improper comment on a defendant’s silence, the State must demonstrate beyond a reasonable doubt that the remark--with its rhetorical impact weighed against the closeness of the case and discounted by the corrective effect of judicial action--did not alter the jury’s verdict.”  
Moore
, 669 N.E.2d at 741.  The rhetorical impact of these comments are minimal. The comments were a challenge to the defense counsel to explain contrary conclusions to the evidence presented.  The evidence presented supporting the defendant’s guilt was not “close,” it was overwhelming.  
See supra
 pp. 9-10.  Finally, although the trial court refused to give an admonishment, it did instruct the jury to not infer guilt from the defendant’s silence.  The remarks would not have altered the jury’s verdict even had they been improper.

19:
In his appellate brief, the defendant states, “The evidence in this case suggests that Peterson was accompanied by another person on December 13, 1990.”  Brief of Appellant at 58.

20:
The defendant merely states that, “Failure to so instruct [in accordance with 
Modesitt
] prejudiced the defendant sufficiently so as to require a new trial since the jury obviously could have relied on the out of court statements introduced in this case without regard to the limitations imposed by 
Modesitt
 and utilized them for substantive purposes to law.”  Supplemental Brief of Appellant at 8.

21:
The Balovski murders were not charged aggravating circumstances in the present case.

22:
“All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law.  Justice shall be administered freely, and without purchase; completely, without denial; speedily, and without delay.”  
Ind. Const.
 art. 1, § 12.

23:
The defendant also claims that his mother’s consent to search the apartment where the defendant previously resided was invalid because:  (1) she had an antagonistic relationship with the defendant
; (2) she was detained by police without receiving an advisement of her Sixth Amendment right to counsel
;  (3) the State failed to prove her consent was voluntary
;  (4) the police did not make reasonable inquiry in order to determine whether the defendant’s mother had any authority to give consent
; and  (5) the police deceived his mother as to the purpose of their investigation.
  However, because we find that the defendant cannot object to his mother’s consent, we do not address the merits of these claims.  
See
 
Peterson v. State
, 674 N.E.2d 528, 533-34 (Ind. 1996).

24:
“While the defendant 
had
 previously lived in the room which was searched, at the time of the search, the defendant had no control or ownership in the premises searched.  On the day before the search, his mother had informed him that he could not live at the residence any longer, helped him pack his belongings, and took him to his girlfriend’s house to stay with the understanding that he was to turn himself in for being AWOL from the Marines. Consequently, the defendant was no longer living at the apartment and thus had no expectation of privacy.   Even had the defendant continued to exhibit some control over the bedroom closet where the shotgun was found, such control was completely defined by, subordinate to, and dependent upon the will of his mother and her right to control the entire premises.  The apartment was leased to his mother and sister.  His mother paid the rent.  His mother had the sole determination as to whether or not he could reside at the apartment.  His mother testified that she “often” searched the bedroom--including the closet where the evidence was located--looking for drugs the defendant may have hidden.  His mother also allowed other persons to reside in the apartment and, significantly, the defendant’s sister sometimes shared the bedroom at night, further diminishing any expectation of privacy he may have had.  In addition, the defendant is hard-pressed to claim a privacy expectation in light of the fact that no fewer than six separate individuals had keys to the apartment and the defendant’s friend, Antoine McGee, exercised access and control over the defendant’s bedroom when the defendant was not at the apartment.”  
Peterson
, 674 N.E.2d at 533 (citations omitted). 

25:
This Court extensively considered this defendant in our review of his death sentence resulting from the murders of the Balovski brothers.  
See
 
Peterson
, 674 N.E.2d at 542 (involving the imposition of the death sentence in the context of a contrary jury recommendation).

1:
Ind. Code § 35-50-2-9 (Supp. 1990).  Statutory references in this separate opinion are to the 1990 Supplement to the Indiana Code unless otherwise noted.

2:
In prior cases we have set forth requirements for sentencing findings in capital cases that are more stringent than in non-capital sentencing situations.  
See
, 
e.g.
, 
Harrison v. State
, 644 N.E.2d 1243, 1262 (Ind. 1995) (setting forth the requirements), 
cert.
 
denied
, 117 S.Ct. 307 (1996); 
Evans v. State
, 563 N.E.2d 1251, 1254 (Ind. 1990) (same).  It appears to me that here the trial court employed the sentencing order procedures typical of non-capital cases.  However, just as the defendant does not assert that sentencing order errors require vacation of the sentence, neither do I so conclude.  First, the aggravating circumstances were clearly proven beyond a reasonable doubt.  Second, I have carefully reviewed the mitigating circumstances asserted to exist in this case (and, to the extent relevant, the prior 
Peterson
 case), the specific facts and reasons given in support thereof, and evaluated and balanced their weight against that of the aggravating circumstances.  Third, I have concluded that the sentence is appropriate for this offender and this crime.  As such, I would hold the requirements for capital sentencing have been satisfied.