## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 22 2020, 7:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
JMT Law, LLC d/b/a Thomas Law
Evansville, Indiana

ATTORNEY FOR APPELLEE

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Mario Watkins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 22, 2020

Court of Appeals Case No.
19A-CR-1846

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge
The Honorable Kelli E. Fink, Magistrate

Trial Court Cause No.
82C01-1901-F3-774

**Friedlander, Senior Judge.**

[1] Mario Watkins appeals his convictions and sentence for dealing in methamphetamine as a Level 3 felony[1] and dealing in methamphetamine as a Level 2 felony.[2] He raises the following two issues for our review:

> 1. Did the trial court err in denying his motion for severance of his two drug-dealing charges?
> 2. Was his sentence inappropriate in light of the nature of his offenses and his character?

We affirm.

[2] In March 2017, Detective Cliff Simpson was employed as a police officer with the Evansville Police Department. He had been a police officer for approximately twenty-five years and had served in a narcotics unit for twenty-one years. The last fifteen years, Detective Simpson had been assigned to a joint Drug Enforcement Administration ("DEA") task force. For the past nineteen years, Detective Simpson worked with a certain confidential informant (hereinafter, "the CI").

[3] On March 8, 2017, the CI met with Detective Simpson and other task force officers in preparation for a controlled buy of methamphetamine from Watkins who was the CI's supplier of the drug. Detective Simpson was the lead case agent in an investigation of Watkins. That morning, and in Detective

---

[1] Ind. Code §§ 35-48-4-1.1(a)(1) and 35-48-4-1.1(d)(1) (2016).

[2] Ind. Code §§ 35-48-4-1.1(a)(1) and 35-48-4-1.1(e)(1) (2016).

Simpson's presence, the CI sent text messages to Watkins and arranged to buy a quarter of an ounce of methamphetamine from Watkins and to pay off an outstanding debt for a previous purchase of a quarter ounce of the same drug. The transactions were to take place later that afternoon at an apartment building located in Evansville, Indiana.

[4]     Around 4:00 p.m., the CI met with Detective Simpson and other task force officers in a parking lot behind the Evansville Police Department. The officers searched the CI's person and vehicle to ensure that he was not already in possession of contraband or money. The officers then provided the CI with buy-money that had been supplied by the DEA—specifically, $300.00 to purchase the methamphetamine and an additional $300.00 to pay off the debt. The CI was given audio-visual recording equipment and a transmitting device to record the interaction with Watkins.

[5]     Detective Simpson and the other task force officers followed the CI as he drove to the apartment building and observed the CI enter the building and then exit the building a short time later. While inside, and out of the officers' view, the CI exchanged the cash for methamphetamine and settled the debt. When the CI left the building, he returned to his vehicle and then drove back to the police department parking lot, with the officers following behind him. Upon arriving at the parking lot, the officers again searched the CI's person and vehicle. The CI gave Detective Simpson the drugs he had purchased, which was later determined to be 6.4 grams of methamphetamine.

[6]     One week later, on March 15, 2017, the CI exchanged text messages with Watkins and arranged a second controlled buy of methamphetamine. As with the previous buy, the CI met with Detective Simpson and other task force officers in the police department parking lot, and the officers searched the CI and provided him with recording equipment. This time, the officers provided the CI with $800.00 in buy-money to purchase twenty-two grams of methamphetamine from Watkins. Detective Simpson and the other task force officers followed the CI as he drove to the same apartment building to meet with Watkins. When the CI arrived, the officers again watched the CI enter the building and then exit a short time later. The CI reentered his vehicle and drove back to the police department parking lot, with the officers following behind him. Upon arriving at the parking lot, the CI was searched. The CI handed a plastic bag to Detective Simpson that contained the drugs he had purchased, what was later determined to be a little over twenty-one grams of methamphetamine. Although the CI had planned to purchase a larger amount of methamphetamine from Watkins that day, Watkins only had twenty-two grams available for sale.

[7]     Approximately two years later, on January 31, 2019, the State charged Watkins with one count of dealing in methamphetamine as a Level 3 felony and also filed a notice of intent to seek habitual offender status against Watkins. The State later added a charge of dealing in methamphetamine as a Level 2 felony. On June 5, 2019, five days before Watkins' jury trial was to begin, Watkins filed a motion to sever the two dealing charges. A hearing on the motion was

held, after which the trial court denied the motion. At trial, Watkins renewed his request for severance, which was denied by the trial court.

[8] Watkins' two-day jury trial began on June 10, 2019. At the conclusion of the trial, the jury found him guilty of both dealing charges. In the second phase of the trial, Watkins admitted to being an habitual offender.

[9] Watkins' sentencing hearing was held on July 8, 2019. At sentencing, the trial court found as follows regarding aggravating and mitigating circumstances:

> The Court notes that the IRA[S] indicates that the defendant's a high risk to reoffend. The[] Court does not[e] also, that the defendant did plead guilty to the habitual offender enhancement phase. The defendant has a criminal history. The defendant's criminal history includes, dealing in methamphetamine as a level 3 felony in this case, as well as the dealing in methamphetamine as a level 2 felony in count 2, in this case. He has an invasion of privacy in 1801-F5-421, a domestic battery in 1711-F6-7277. [He has a] possession of controlled substance conviction in 1412-F2-53[3]7, [and] also in that cause, there was a possession of cocaine as a level 6 felony, a possession of controlled substance as an A misdemeanor and a maintaining a common nuisance conviction, . . . as a level 6 felony. He has a conviction for knowingly or intentionally operating a motor vehicle without receiving a license. He has a conviction in 1212-CM-5456, for possession of marijuana and a conviction for resisting law enforcement. He has a conviction in cause number 1106-CM-3274 for purchasing of more than 3.6 grams of precursors within more than 3 days. He has a conviction for burglary in [0]403-FA-200 as a Class B felony, where he was sentenced to the Indiana Department of Corrections for a period of eight years.

Tr. p. 144. The trial court sentenced Watkins to an aggregate term of thirty years executed in the Indiana Department of Correction ("DOC")—specifically, twenty years for the Level 2 felony conviction and nine years for the Level 3 felony conviction, to be served concurrently, with the sentence for the Level 2 felony enhanced by ten years for the habitual offender finding. Watkins now appeals.

[10] We first address Watkins' claim that the trial court should have severed the dealing charges. Indiana Code section 35-34-1-9(a) (1981) is the basis for joining offenses and provides:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses:
>
> > (1) are of the same or similar character, even if not part of a single scheme or plan; or
> >
> > (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

Subsection 9(a)(1) refers to the nature of the charged offenses, and subsection 9(a)(2) refers to the operative facts underlying those charges. *Pierce v. State*, 29 N.E.3d 1258 (Ind. 2015).

[11] Indiana Code section 35-34-1-11(a) (1981), however, provides that the defendant shall have the right to severance of the offenses "[w]henever two (2) or more offenses have been joined for trial in the same indictment or

information *solely* on the ground that they are of the same or similar character[.]" Ind. Code § 35-34-1-11(a) (emphasis added).

> In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
>
> > (1) the number of offenses charged;
> >
> > (2) the complexity of the evidence to be offered; and
> >
> > (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

*Id.*

[12] If offenses have been joined solely because they are of the same or similar character, a defendant is entitled to severance as a matter of right, and a trial court has no discretion to deny a severance motion. *Pierce*, 29 N.E.3d 1258. We review de novo arguments that a trial court improperly denied a motion to sever as a matter of right. *Booker v. State*, 790 N.E.2d 491 (Ind. Ct. App. 2003), *trans. denied*. Where offenses have been joined because the defendant's underlying acts are connected together or constitute parts of a single scheme or plan, we review the trial court's decision on severance for an abuse of discretion. *Pierce*, 29 N.E.3d 1258. We will reverse for an abuse of discretion "only upon a showing of clear error." *Ben-Yisrayl v. State*, 690 N.E.2d 1141, 1146 (Ind. 1997) (quoting *Davidson v. State*, 558 N.E.2d 1077, 1083 (Ind. 1990)).

[13]     Watkins argues that the two dealing charges were joined solely because they were of a similar character and that he was entitled to severance as a matter of right. We disagree.

[14]     A defendant is not entitled to severance as of right if multiple criminal acts fall under Indiana Code section 35-34-1-9(a)(2). If the operative facts establish a pattern of activity beyond mere satisfaction of the statutory elements, such as that multiple crimes have been committed with a common victim, modus operandi, and motive, a defendant is not entitled to severance of charges as of right. *Pierce*, 29 N.E.3d 1258. We acknowledge that the crimes committed by Watkins did not have a common victim. Nevertheless, we find the record establishes that Watkins was not entitled to severance of the charges as a matter of right because the charged offenses were "connected together or constitute[ed] parts of a single scheme or plan." Ind. Code § 35-34-1-9(a)(2).

[15]     Here, the CI testified that Watkins was his "source" for methamphetamine. Tr. p. 97. The sales of the drugs occurred during the course of a police investigation, within a limited period of time (one week) in a limited geographical area (Evansville). The participants in both drug transactions were the same, and the transactions took place in the same apartment building. We therefore conclude that the evidence established a pattern of activity beyond the mere satisfaction of the statutory elements of the charges and that the two drug transactions were connected together by a common motive on the part of Watkins, that is, to deal methamphetamine. *See, e.g.*, *Sweet v. State*, 439 N.E.2d 1144, 1147 (Ind. 1982) (trial court's denial of motion for severance affirmed

where all eight charges against defendant arose from controlled buys "conducted during a period of approximately two months and involved many ongoing and continuous transactions with the same undercover police officers and the same informant"). As such, Watkins was not entitled to severance as a matter of right, and the denial of the motion was within the trial court's discretion.

[16] Furthermore, severance of the dealing charges was not necessary to promote a fair determination of Watkins' guilt or innocence for each offense. *See* Ind. Code § 35-34-1-11(a). When reviewing the discretionary denial of a motion to sever, we must consider whether severance was required in order to promote a fair determination of the defendant's guilt or innocence after reviewing subsections 1-3 of Indiana Code section 35-34-1-11(a). *Ben-Yisrayl*, 690 N.E.2d 1141. In looking at the factors and applying them to the case before us, we note that there were only two offenses charged, and that neither the number of offenses charged nor the complexity of the evidence weigh in favor of severance. Also, the evidence presented in support of the charges was straightforward and inextricably intertwined. The only witnesses that testified for the State were members of the police task force who directly participated in the preparation and surveillance of the controlled buys, the DEA forensic chemist who analyzed the methamphetamine, and the CI. In light of the uncomplicated nature of the evidence, we do not believe there was a significant risk of juror confusion or any doubt that the jurors would be able to distinguish the evidence and apply the law intelligently to each offense. As such, we

conclude the trial court did not abuse its discretion in denying Watkins'
severance motion.

[17]     Next, Watkins argues his thirty-year sentence is inappropriate in light of the
nature of his offenses and his character.

> We may review and revise criminal sentences pursuant to the
> authority derived from Article 7, Section 6 of the Indiana
> Constitution. Indiana Appellate Rule 7(B) empowers us to revise
> a sentence "if, after due consideration of the trial court's decision,
> the Court finds that the sentence is inappropriate in light of the
> nature of the offense and the character of the offender." Because
> a trial court's judgment "should receive considerable
> deference[,]" our principal role is to "leaven the outliers."
> *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008). "Such
> deference should prevail unless overcome by compelling
> evidence portraying in a positive light the nature of the offense
> (such as accompanied by restraint, regard, and lack of brutality)
> and the defendant's character (such as substantial virtuous traits
> or persistent examples of good character)." *Stephenson v. State*, 29
> N.E.3d 111, 122 (Ind. 2015). The defendant bears the burden to
> persuade this court that his or her sentence is inappropriate,
> *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may
> look to any factors appearing in the record for such a
> determination. *Stokes v. State*, 947 N.E.2d 1033, 1038 (Ind. Ct.
> App. 2011), *trans. denied*.

*Reis v. State*, 88 N.E.3d 1099, 1101-02 (Ind. Ct. App. 2017). The question under
Appellate Rule 7(B) analysis is "not whether another sentence is *more*
appropriate" but rather "whether the sentence imposed is inappropriate." *King
v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008). Whether a sentence is
inappropriate "turns on our sense of the culpability of the defendant, the

severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell*, 895 N.E.2d at 1224.

[18] We begin with the advisory sentence in determining the appropriateness of a sentence. *Childress*, 848 N.E.2d 1073. Since the advisory sentence is the starting point our General Assembly has selected as an appropriate sentence for the crime committed, the defendant bears a particularly heavy burden in persuading us that his sentence is inappropriate when the trial court imposes the advisory sentence. *Golden v. State*, 862 N.E.2d 1212 (Ind. Ct. App. 2007), *trans. denied*. The sentencing range for a Level 2 felony is "a fixed term of between ten (10) and thirty (30) years, with the advisory sentence being seventeen and one-half (17½) years." Ind. Code § 35-50-2-4.5 (2014). The additional fixed term for an habitual offender finding for a Level 2 felony is between six and twenty years. Ind. Code § 35-50-2-8(i) (2015). A Level 3 felony carries a sentencing range of three to sixteen years, with an advisory sentence of nine years. Ind. Code § 35-50-2-5(b) (2014). Watkins was sentenced to twenty years for the Level 2 felony—two and one-half years longer than the advisory sentence but ten years shorter than the maximum sentence. The trial court enhanced the Level 2 felony sentence by ten years—ten years less than the maximum enhancement allowed by statute. Watkins was sentenced to the advisory sentence for the Level 3 felony.

[19] Watkins presents no authority or argument on the nature of his offenses. Instead, he focuses solely on the nature of his character. When considering the character of the offender, one relevant fact is the defendant's criminal history.

*Johnson v. State,* 986 N.E.2d 852 (Ind. Ct. App. 2013). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id.*

[20] Watkins' criminal history consists of eight misdemeanor convictions—specifically, invasion of privacy, domestic battery, possession of a controlled substance (twice), operating a vehicle without ever receiving a license, possession of marijuana, resisting law enforcement, and purchasing more than 3.6 grams of precursor in a day; and three felony convictions of possession of cocaine, maintaining a common nuisance, and burglary resulting in bodily injury. Six of his prior convictions involved controlled substances. He had an active warrant for a case involving guns and drugs in Mississippi when he was sentenced in the instant case. Watkins has an extensive criminal history that includes crimes similar to the instant offenses. Given Watkins' criminal history, we cannot say that his sentence is inappropriate for his character.

[21] Watkins has not shown that his thirty-year sentence is inappropriate in light of the nature of his offenses and his character. We therefore affirm the sentence imposed by the trial court.

[22] Watkins further contends that, at sentencing, the trial court should have considered his "prior addiction to opiates that stemmed from a prescription that got away from him[,]" his "lengthy history of marijuana usage from the time he was fifteen . . . and continuing into his adulthood[,]" and his "strong dependence on cocaine that was a daily habit up until his arrest date" instead of

"lean[ing] on his prior history and [the] fact that [he showed] a high risk to reoffend on the IRAS test." Appellant's Br. p. 16. We note, however, that Watkins told the officer who interviewed him for the pre-sentence investigation report that he was not a regular user of drugs or alcohol at the time of his arrest for the instant offenses and that he would not need substance abuse treatment upon his release from custody.

[23] To the extent Watkins asserts that the trial court abused its discretion in the weight it gave to the aggravating and mitigating circumstances it found, Watkins' assertion is not well taken. A sentencing court cannot abuse its discretion by failing to properly weigh aggravating and mitigating circumstances. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

[24] Judgment affirmed.

Mathias, J., and Brown, J., concur.