In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 03-3169

OBADYAH BEN-YISRAYL,

*Petitioner-Appellee,*

*v.*

CECIL DAVIS,

*Respondent-Appellant.*

---

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 01 C 871—**Allen Sharp**, *Judge.*

---

ARGUED OCTOBER 27, 2004—DECIDED DECEMBER 13, 2005

---

Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* An Indiana jury convicted Obadyah Ben-Yisrayl, formerly known as Christopher Peterson, of murdering Harchand Dhaliwal and Marie Meitzler. After the Indiana Supreme Court affirmed Ben-Yisrayl's conviction and sentence on direct appeal and denied Ben-Yisrayl collateral relief, the district court granted his petition for writ of habeas corpus. On appeal, we find the Indiana Supreme Court's determination that the prosecutor did not violate Ben-Yisrayl's Fifth Amendment rights during his closing argument to be an unreasonable determination in light of the evidence. In addition, we find the state court's determination of the constitutional

error in Ben-Yisrayl's case an unreasonable application of clearly-established, federal law. We, therefore, affirm the judgment of the district court.

## I. BACKGROUND

This case involves the murders of Harchand Dhaliwal and Marie Meitzler in December, 1990. On January 28, 1991, the Lake County, Indiana police arrested Antwion McGee in connection with a separate shooting and car theft. Based on statements McGee made while in custody, the police then arrested and interviewed Ben-Yisrayl on January 29 in connection with the separate shooting and car theft. During the ensuing police interview, Ben-Yisrayl further implicated McGee in the crimes. Once confronted with Ben-Yisrayl's statements, McGee accused Ben-Yisrayl of being involved with the Dhaliwal and Meitzler killings and led police to Ben-Yisrayl's former home, where police found a sawed-off shotgun and shotgun shells in Ben-Yisrayl's bedroom.

The police confronted Ben-Yisrayl with McGee's statements and the discovery of the shotgun in his closet. Before the confrontation, however, the police read Ben-Yisrayl his *Miranda* rights, and after the confrontation, the police allowed Ben-Yisrayl to speak with his mother. After speaking with his mother, Ben-Yisrayl waived his *Miranda* rights the next morning and confessed to his role in the Dhaliwal and Meitzler shootings.

Based on his confession to the police and McGee's cooperation, Ben-Yisrayl was charged with the murders of Dhaliwal and Meitzler. Ben-Yisrayl, however, recanted his statement to the police, pled not guilty to the charges and proceeded to trial where he chose not to testify in his own defense. Just before closing arguments in his trial, attorneys for both sides met for a sidebar with the judge. During the sidebar, the prosecutor expressed an

intention to argue to the jury that no evidence had been presented as to why Ben-Yisrayl would have given a false confession. Ben-Yisrayl's attorneys objected to this line of argument as a direct reference to Ben-Yisrayl's decision not to testify, and the judge agreed that the proposed comments would be inappropriate. The prosecutor ignored the court's admonishment, however, and shortly after the sidebar made the following statement to the jury during closing argument:

> I told you in the opening statement that the Defendant confessed to killing these [two] people with his shotgun. We proved that. We told you that was the cornerstone of our case and why? Because it is self evidence [sic] that no one freely and voluntarily confesses to a murder unless they're guilty. Let the Defendant tell you why somebody would freely and voluntarily confess to—

(Trial Record at 5568.) At that moment, the defense attorneys interrupted the prosecutor and objected to the prosecutor's argument and moved the court for a mistrial. Unabated, the prosecutor continued to speak over the objection stating:

> —on general, why—
>
> . . .
>
> —defendant's counsel can say why a person can confess to a crime.

(Trial Record at 5568.) The court took defense counsels' motion for a mistrial under advisement and allowed the prosecutor to continue with his closing argument. The prosecutor then continued to focus the jury's attention on the defendant's confession:

> I said the confessions were the cornerstone of our case because it's self evidence [sic] that no one, anybody, nobody will ever confess to a murder

freely and voluntarily unless they commit [sic] it. . . . So if you believe that there isn't any reason for somebody to admit to murder unless they did it, you're there. . . . What are the chances that if somebody falsely accuses me of murder that within 24 hours I'm going to falsely admit to it[?] They don't match. I mean it just doesn't make sense. It's—two things don't make sense.

(Trial Record at 5570-75.) The court found that the prosecutor's comments were not improper and denied the defendant's request for a mistrial. The defendant then asked for a jury instruction admonishing the jury as to the prosecutor's comment. The court denied counsel's proposed instruction and responded that the instructions already given were more relevant than the instruction proposed, which would only call attention to what the court had already told the jury to disregard. The jury convicted Ben-Yisrayl on all charges and recommended that he be sentenced to death. The judge agreed with the jury's recommendation and entered judgment accordingly.

In his ensuing direct and collateral appeals, Ben-Yisrayl's counsel attempted to compile a complete and accurate record of the trial proceedings. Counsel was greatly impeded in this effort, however, by the state of the official record. Before finishing the process of transcribing her notes, the court reporter from Ben-Yisrayl's trial resigned as a result of illness. A second court reporter and various specialists worked to complete the transcription, and they ultimately finished the job with significant difficulty and only partial success. The resulting record was replete with lines marked "undecipherable" and errors both major and minor, as the concurring opinion, *infra,* indicates.

The Indiana Supreme Court ordered Ben-Yisrayl's two trial attorneys, the deputy prosecutor, and the trial judge to reconstruct the missing portions of the record as well as they could. If either party objected to any portion of

the final version, that party was to inform the court by February 1, 1995. Neither side objected, and the court declared the reconstruction process complete on May 8, 1995.

On direct appeal, Ben-Yisrayl presented twenty claims. In particular, Ben-Yisrayl claimed that reversible error occurred when, during its closing argument, the government directly commented on the defendant's decision to exercise his constitutional right not to testify. *Ben-Yisrayl v. State*, 690 N.E.2d 1141, 1148 (Ind. 1997) ("Ben-Yisrayl I"). Citing *Moore v. State*, 669 N.E.2d 733 (Ind. 1996)[1] in support, the Indiana Supreme Court determined that the jury in the case could not have reasonably interpreted the prosecutor's comments as a suggestion to infer guilt from the defendant's silence. *Ben-Yisrayl I*, 690 N.E.2d at 1149. The state court concluded that the prosecutor did not commit reversible error and the trial court did not abuse its discretion in refusing to grant a mistrial and refusing to give an admonishment to the jury. *Id*. The Indiana Supreme Court also affirmed Ben-Yisrayl's conviction and sentence on collateral review. *Ben-Yisrayl v. State*, 753 N.E.2d 649 (Ind. 2001) ("Ben-Yisrayl II").

---

[1] In *Moore*, the Indiana Supreme Court analyzed both the historical and contemporary treatment of a prosecutor's comments on the defendant's failure to testify and held that "The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence." 669 N.E.2d at 739. *Moore* made clear that direct and indirect references to the defendant's failure to testify are not, *per se*, improper. *Id*. Indiana courts, therefore, look to whether the prosecutor's comments in a particular case could reasonably be interpreted by the jury as an invitation to draw an adverse inference from the defendant's silence.

In his petition for writ of habeas corpus, Ben-Yisrayl again raised many issues, but the district court only addressed two: comments made by the prosecutor during closing argument and the concerns regarding the accuracy of the trial transcript. In granting Ben-Yisrayl's petition, the district court held that the prosecutor's comments during closing argument constituted a violation of Ben-Yisrayl's rights, *Ben-Yisrayl v. Davis*, 277 F. Supp. 2d 898, 903 (N.D. Ind. 2003) ("Ben-Yisrayl III"), and that the Indiana Supreme Court did not reasonably apply United States Supreme Court precedent when it ruled on Ben-Yisrayl's Fifth Amendment claim or when it ruled that any alleged Fifth Amendment violation was harmless error. *Id*. at 905. In addition, the district court found that the inadequacy of the state trial court record constituted a due process violation. *Id*. at 905-06.

## II. ANALYSIS

We review the district court's grant of Ben-Yisrayl's petition for habeas relief *de novo*. *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (2000). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), substantially amended the statutory law governing federal review of habeas corpus petitions. *See* 28 U.S.C. §§ 2244, 2253, 2254, and 2255 (2000). The amendments "place[ ] a new constraint" on the ability of a federal court to grant habeas corpus relief to a state prisoner "with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A federal court cannot grant a petition for a writ of habeas

corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). A state court's factual findings are presumed correct, and the petitioner has the burden of rebutting them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

In evaluating whether the state court made an "unreasonable determination of the facts in light of the evidence" we must be objectively convinced that the record before the state court does not support the state court's findings in question. Under this framework, an unreasonable determination of the facts in light of the evidence can occur where the state-court finding is unsupported by sufficient evidence. *See, e.g., Wiggins v. Smith*, 539 U.S. 510, 520-21

(2003); *Ward v. Sternes*, 334 F.3d 696, 705-08 (7th Cir. 2003).

In the instant case, two issues are before us: Ben-Yisrayl's Fifth Amendment claim relating to the prosecutor's comments during closing argument and his Due Process claim relating to the veracity and accuracy of the trial transcript. Both issues were adjudicated on the merits by the Indiana Supreme Court, but because we find sufficient grounds to affirm the district court's grant of the writ on Ben-Yisrayl's Fifth Amendment claim, we will not reach his Due Process claim.

A.   Ben-Yisrayl's Fifth Amendment Rights

Ben-Yisrayl claims that the prosecutor's comments during closing argument violated his Fifth Amendment privilege not to be compelled to testify. As the Supreme Court has made clear, "Where the prosecutor on his own initiative asks the jury to draw an adverse inference from a defendant's silence, . . . the privilege against compulsory self-incrimination is violated." *United States v. Robinson*, 485 U.S. 25, 32 (1988). In addition, indirect references to the defendant's failure to testify are constitutionally impermissible if "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify." *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir. 1985) (quoting *United States v. Lyon*, 397 F.2d 505, 509 (7th Cir. 1968)).

In addressing Ben-Yisrayl's Fifth Amendment claim, the Indiana Supreme Court "looked to whether the prosecutor's comments in this case could reasonably be interpreted by the jury as an invitation to draw an adverse inference from the defendant's silence," *Ben-Yisrayl I*, 690 N.E.2d at 1149. The state court found as follows:

> The jury in this case could not reasonably have interpreted the prosecutor's comments as suggestion to infer guilt from the defendant's silence. While the prosecutor could have been more articulate, it is clear that he was responding to any possible implications that the defendant's confession was less than voluntary. His "challenge" to defense counsel was made to illustrate that the only reason a defendant would confess to a crime he did not commit would be because of coercion or duress. He then pointed out that the State presented substantial evidence that the confession was not the result of coercion or duress. Consequently, he was arguing that the confession should be taken by the jury as direct evidence of the defendant's guilt. The theme of the State's argument was a challenge directed at defense counsel which pointed out the uncontradicted nature of the State's evidence of voluntariness and invited defense counsel to explain, in its closing argument, any contrary conclusions.

*Ben-Yisrayl I,* 690 N.E.2d at 1149. We find that the Indiana Supreme Court's determination of Ben-Yisrayl's Fifth Amendment right is not a decision contrary to or based upon an unreasonable application of clearly-established federal law. Instead, we find that its determination that the jury in Ben-Yisrayl's case could not have reasonably interpreted the prosecutor's comments as a suggestion to infer guilt from the defendant's silence an unreasonable determination of the facts in light of the evidence.

The Indiana Supreme Court's decision denying Ben-Yisrayl's Fifth Amendment claim was based upon its factual determination that the prosecutor's comment, "Let the Defendant tell you" was not directed at Ben-Yisrayl individually, but, "a challenge directed at defense counsel" that, "invited defense counsel to explain, in its closing argument,"

why the jury should not take the confession as valid. *Ben-Yisrayl I*, 690 N.E.2d at 1148 n.17. We find this determination by the Indiana Supreme Court unsupported by sufficient evidence. Just seconds before the prosecutor invited the jury to "Let the Defendant tell you," the prosecutor told the jury that "the Defendant confessed to killing these [two] people with his shotgun." Trial Record at 5568, *quoted in Ben-Yisrayl III*, 277 F. Supp. 2d at 901. Specifically, the prosecutor stated:

> I told you in the opening statement that the Defendant confessed to killing these [two] people with his shotgun. We proved that. We told you that was the cornerstone of our case and why? Because it is self evidence [sic] that no one freely and voluntarily confesses to a murder unless they're guilty. Let the Defendant tell you why somebody would freely and voluntarily confess . . .

(*Id.*) Over an objection from defense counsel, the prosecutor further compounded his challenge to Ben-Yisrayl by continuing to focus the jury's attention on the defendant's confession:

> I said the confessions were the cornerstone of our case because it's self evidence [sic] that no one, anybody, nobody will ever confess to a murder freely and voluntarily unless they commit [sic] it. . . . So if you believe that there isn't any reason for somebody to admit to murder unless they did it, you're there. . . . What are the chances that if somebody falsely accuses me of murder that within 24 hours I'm going to falsely admit to it[?] They don't match. I mean it just doesn't make sense. It's—two things don't make sense.

(Trial Record at 5570-75.) Without a doubt, the references in this argument to "the Defendant" were aimed at Ben-Yisrayl alone and not at his counsel. Thus, it was *at least* reasonable for the jurors to interpret the prosecutor's

recommendation to "Let the Defendant tell you" as a reference to Ben-Yisrayl individually, and, therefore unreasonable for the Indiana Supreme Court to determine that no juror could have reasonably made this logical jump.

In following with the legal maxim *noscitur a sociis*,[2] that a term can be properly defined by interpreting the text surrounding that term, we find that the prosecutor's natural progression of references including his challenge, "Let the Defendant tell you" was purposeful, directed at Ben-Yisrayl individually, and intended to guide jurors to an impermissible inference under the Fifth Amendment. The progression of the prosecutor's words constitute clear and convincing evidence rebutting the Indiana Supreme Court's finding that the jury in this case could not reasonably have interpreted the prosecutor's comments as a suggestion to infer guilt from the defendant's silence.

Additional clear and convincing evidence rebutting the state court's finding can be found by analyzing how the prosecutor used the term "Defendant" throughout its entire closing argument. The district court also reviewed how the prosecutor used the term "Defendant" throughout the closing argument and by the district court's count, in the portion of the argument that preceded the suspect language, the prosecutor used "the Defendant" to refer to Ben-Yisrayl alone seven times[3] and used the term to refer to Ben-Yisrayl's counsel only once.[4] Our own independent review reveals an additional instance in which the prosecutor used "the Defendant" to refer to Ben-Yisrayl,[5] one where the

---

[2]  "a word is known by the company it keeps."

[3]  Trial Record at 5554:22, 5555:17, 5556:10, 5556:22, 5557:1, 5567:25, 5568:4.

[4]  T.R. at 5567:14.

[5]  T.R. at 5554:14.

prosecutor's use of the word "Defendant" was unclear,[6] and six in which the prosecutor referred to a generic or hypothetical defendant.[7]

In the portion of the argument that followed, "Let the Defendant tell you," the district court located forty-nine instances in which the prosecutor used "the Defendant" to refer to Ben-Yisrayl alone,[8] compared to only four instances where "the Defendant" meant Ben-Yisrayl's counsel.[9] We agree with the district court's assessment of the record, and we have located two additional instances in which the prosecutor referred to Ben-Yisrayl individually as "the Defendant";[10] one in which the prosecutor referred to a generic or hypothetical defendant[11]; and one case where we find the term used ambiguously.[12]

By our count, then, the part of the State's closing argument that preceded the challenged language included eight clear references to Ben-Yisrayl as "the Defendant" versus one to his counsel, and the portion after the quotation included fifty clear references to Ben-Yisrayl as "the Defendant" versus four to his counsel. As a result, in looking at

---

[6]  T.R. at 5558:22.

[7]  T.R. at 5559:25, 5560:1, 5567:17, 5567:20, 5567:21, 5567:23.

[8]  T.R. at 5570:21, 5571:8, 5571:13, 5571:16, 5571:20, 5571:22, 5572:1, 5572:11, 5573:8, 5573:12, 5573:21, 5573:21, 5573:23, 5573:24, 5574:2, 5574:5, 5574:13, 5574:23, 5574:25, 5575:1, 5575:8, 5575:21, 5576:2, 5576:2, 5576:6, 5576:8, 5576:9, 5576:13, 5576:17, 5576:22, 5578:1, 5578:3, 5578:10, 5578:14, 5579:1, 5579:2, 5579:13, 5580:1, 5581:5, 5583:4, 5583:20, 5583:22, 5585:4, 5585:18, 5585:22, 5585:23, 5586:19, 5588:3, 5589:8.

[9]  T.R. at 5573:13, 5580:5, 5582:2, 5588:14.

[10]  T.R. at 5568:17, 5587:4.

[11]  T.R. at 5582:9.

[12]  T.R. at 5573:24.

the prosecutor's closing argument as a whole, these over-
whelming statistics constitute further evidence that,
contrary to the finding of the Indiana Supreme Court, a
reasonable juror could indeed interpret "Let the Defendant
tell you" as a reference to Ben-Yisrayl individually, and not
to his counsel.

The respondent argues that such statistical evidence
is immaterial because there is no predictive value in the
prosecutor's references to Ben-Yisrayl individually as it
is clear from the record that the prosecutor said "the
Defendant" when he meant either Ben-Yisrayl or Ben-
Yisrayl's counsel.

Respondent's argument is unavailing as the question
before us is not whether the jury could ascertain with any
certainty whether the prosecutor's use of "the Defendant"
was a reference to Ben-Yisrayl's counsel rather than to Ben-
Yisrayl individually. Instead, our inquiry is whether, based
on the prosecutor's comments as a whole, it would have
been reasonable for a juror to *interpret* the chal-
lenged prosecutor's comments as reference to Ben-Yisrayl
individually. Because the Indiana Supreme Court found
that it was unreasonable for any juror to interpret the pros-
ecutor's comments as reference to Ben-Yisrayl individually,
but expressed no comment on whether a juror could predict
with any certainty the target of the prosecutor's comments,
the respondent's argument in no way undermines the clear
and convincing evidence rebutting the state court's determi-
nation.

The facts of this case, reasonably construed, indicate that
the jury could have believed that the prosecutor was
arguing that, because Ben-Yisrayl failed to testify as to why
he would confess to a crime that he did not commit, the
inference is that his confession was voluntary and true. The
prosecutor's challenge to Ben-Yisrayl to explain his confes-
sion is closely analogous to the jury instruction that the

Supreme Court expressly ruled unconstitutional in *Griffin v. California:*

> As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because [they are] within his knowledge, if he does not testify . . . the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are most probable.

380 U.S. 609, 610 (1965).

B.   Harmless Error

A constitutional error at trial does not mean that a state prisoner is automatically entitled to habeas corpus relief. This circuit has held that under § 2254(d), finding error is only a necessary step. *See Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003) (explaining that constitutional error is necessary, but insufficient to grant a writ under § 2254(d)). An error can serve as grounds for habeas corpus relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Aleman*, 320 F.3d at 689-90. As a result, we cannot issue writs of habeas corpus based on constitutional errors that are proven "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1966); *Aleman,* 320 F.3d at 689-90.

In this case, the Indiana Supreme Court determined that the challenged comment in the prosecutor's closing argument, even if improper, was harmless, as Ben-Yisrayl's confession sufficed to ensure conviction on its own. *Ben-Yisrayl I*, 690 N.E.2d at 1149 n.18. The court reasoned that "The evidence presented supporting the defendant's

guilt was not 'close,' it was overwhelming." *Id.* at 1149. When the state court concludes that any error was or would be harmless, that finding is subject to the same standard of review as is any other legal conclusion—de novo. *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). That is, we must accept it unless it is contrary to or represents an unreasonable application of clearly established federal law. *Mitchell*, 540 U.S. at 17-18. In *Chapman v. California*, 386 U.S. 18 (1967), the Supreme Court set forth the test for determining whether a constitutional error is harmless. The test is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24. If the error complained of contributed to the verdict obtained, then the error is not harmless. *Id.*

To support its finding that the evidence against Ben-Yisrayl was overwhelming, the Indiana Supreme Court made the following points, based on its reading of the evidence from trial: (1) Ben-Yisrayl confessed to police; (2) he confessed to "an acquaintance"; (3) he acknowledged that he owned a gun that "was identified as the same weapon used to commit the murders"; (4) witnesses corroborated his ownership of the gun; (5) the gun was found in an apartment where Ben-Yisrayl formerly lived; and (6) "Three other witnesses testified they saw [Ben-Yisrayl] or his car either at the murder scene or in close proximity thereto." *Ben-Yisrayl I*, 690 N.E.2d at 1147-48.

Items (3), (4), and (5) all go toward showing that Ben-Yisrayl owned a particular gun that was seized by the police. But the Indiana Supreme Court erred when it stated that Ben-Yisrayl's gun "was identified as the same weapon used to commit the murders." *Id.* at 1148. At trial, Kevin Judge, a firearms and toolmark examiner, testified that the shotgun wadding recovered from the two victims, as well as from the Dhaliwal crime scene was consistent with *a* 12-gauge shotgun. However, Judge could not identify *the*

shotgun that fired that wadding. In response to defense counsel's question whether he could match the wadding to Ben-Yisrayl's gun, Judge conceded, "in this case, no, there wasn't enough marks on the wadding to compare it to that weapon." Thus, at best, the forensic evidence indicates that a 12-gauge shotgun was used to commit both murders. The evidence, however, stops short of establishing that Ben-Yisrayl's 12-gauge gun was the murder weapon.

We find, as did the district court, that the Indiana Supreme Court also exaggerated the value of evidentiary item (6). Of the "[t]hree other witnesses" the court cited, one witness placed Ben-Yisrayl about 1.25 miles from the Dhaliwal murder at around the time of that crime; another witness saw Ben-Yisrayl's car at the scene of the Meitzler murder one day before the shooting; and a third witness saw Ben-Yisrayl at the scene of the Dhaliwal murder two days after that crime. *Ben-Yisrayl III*, 277 F. Supp. 2d at 904-05. None of the witnesses placed Ben-Yisrayl at either murder scene at the time of the corresponding crime.

The state court's reliance on Ben-Yisrayl's confession to an "acquaintance," while not exaggerated, is nonetheless problematic. The acquaintance to whom Ben-Yisrayl confessed was McGee, who explained to the jury that he was testifying as part of a deal he had struck with prosecutors to reduce his sentence for another shooting. Given his personal interests in pinning some crime to another individual to save his own hide, McGee's testimony in this case is hardly overwhelming.

In summary, the evidence that the Indiana Supreme Court relied on is not overwhelming. In light of the state's circumstantial case against Ben-Yisrayl, the jury's decision as to guilt or innocence rested heavily on its determination of the reliability of Ben-Yisrayl's confession. Without Ben-Yisrayl's confession there would have been no convic-

tion. In challenging Ben-Yisrayl to explain his confession to the jury, the prosecutor invited the jury to infer guilt from Ben-Yisrayl's silence and to deem his confession reliable and accurate. The prosecutor's improper closing statements, therefore, played a significant role in securing a guilty verdict. As such, we find that the constitutional error in this case is not harmless, and that the Indiana Supreme Court's determination of harmless error in this case was an unreasonable application of clearly-established federal law.

## III.  CONCLUSION

For the reasons stated above, we AFFIRM the district court's grant of Ben-Yisrayl's petition for writ of habeas corpus. We remand with instructions to grant the writ unless the State of Indiana elects to retry him within 120 days from the issuance of this opinion.

MANION, *Circuit Judge*, concurring.  As the district court noted in its opinion granting Ben-Yisrayl's petition for habeas corpus, "The reality is that a death penalty case, whether in state or federal court, is different." *Ben-Yisrayl v. Davis*, 277 F. Supp. 2d 898, 903 (N.D. Ind. 2003). The district court illustrates this difference by noting that in Indiana it is mandatory that any conviction involving the death penalty is automatically appealed to the Supreme Court of Indiana. Also, only lawyers qualified to defend in death penalty cases are permitted to represent such defendants. Theoretically, all habeas cases are treated with the same standards, but realistically, in the case of a defendant facing death, the appeal invites more scrutiny.

After receiving his *Miranda* warnings, consulting with his mother, and "sleeping on it," Obadyah Ben-Yisrayl confessed to murdering several people with his shotgun, including the gas station attendant and the motel clerk who were the victims of the murder convictions challenged in this appeal. In affirming the conviction and penalty, the Supreme Court of Indiana regarded the evidence as overwhelming. The court here claims otherwise. If not overwhelming, I conclude that it was considerable. In addition to the voluntary confessions, the evidence showed that both victims were shot in the head at close range with a 12-gauge shotgun; Winchester AA 8 shotgun waddings were found at both crime scenes;[1] both shootings were in the city of Portage, two days apart; the shotgun and ammunition found in his room was the same type used in the murders; Ben-Yisrayl and/or his car were spotted near the scenes of the murders; and he "confessed" to McGee, who testified in exchange for a reduced sentence in an unrelated crime. All of that evidence notwithstanding, to the prosecution Ben-Yisrayl's confession to the police was key. The defense was unable to show that the confession was coerced or otherwise involuntary in its cross-examination of police witnesses.

Although critical of the sufficiency of the evidence, in this case the court concludes, as did the district court, that the prosecutor's statement "Let the defendant tell you why somebody would freely and voluntarily confess . . ." was a sufficiently serious constitutional violation to overturn the conviction. Taken in isolation, the court is correct. Presum-

---

[1] As the district court noted, "Kevin A. Judge testified that ballistics tests proved that the defendant's shotgun fired a shell casing recovered at a different murder scene and he testified that all of the shotgun shell fragments recovered from all of the murder scenes (charged and uncharged) contained number 8 shot with pink .12 gauge power piston wadding." *Ben-Yisrael*, 277 F. Supp. 2d at 904.

ably, had the prosecutor instead said "defendant's counsel", we would not have reversible error on this issue. The Supreme Court of Indiana went to great lengths, first to ascertain the validity of the record that was unfortunately distorted by an unreliable court reporter, then to evaluate the context of the prosecutor's misstatement. Given the record as a whole, the Supreme Court of Indiana concluded that "The jury in this case could not reasonably have interpreted the prosecutor's comments as a suggestion to infer guilt from the defendant's silence." *Ben-Yisrayl v. State*, 690 N.E.2d 1141, 1149 (Ind. 1996). Were it not for the state of the record, I would be inclined to agree with the Supreme Court of Indiana. This statement was apparently isolated. Although the prosecutor made many references to the defendant, apparently all but this one were appropriate. Immediately after the statement was made, defense counsel objected. The trial court took a motion for mistrial under advisement, but concluded that the court's instruction to the jury regarding Ben-Yisrayl's right not to testify would sufficiently erase any harm that misstatement might have caused.

Based on the evidence presented and the record that is before us, I would be inclined to agree with the Supreme Court of Indiana that the prosecutor did not commit reversible error and the trial court did not abuse his discretion in refusing to grant a mistrial. But what moves me to concur with the court's affirmance of the district court's grant of the petition is the unfortunately defective state of the record from the state trial. Without a more reliable record to review, it is an unreasonable application of clearly established federal law to conclude that the prosecutor's statement constituted harmless error. *See Simmons v. Beyer*, 44 F.3d 1160, 1170 (3d Cir. 1995) (granting conditional writ of habeas corpus since defendant was prejudiced by inadequate transcripts that made his claim unreviewable) (citing *United States*

*v. Wilson*, 16 F.3d 1027, 1031 (9th Cir. 1994) (on direct appeal remanding for a new trial because inadequate transcripts precluded review of merits)). I agree with the district court's conclusion that ". . . this record simply is not good enough to sustain a state court death penalty conviction." *Ben-Yisrayl*, 277 F. Supp. 2d at 905. As the district court noted, the original court reporter was having serious emotional problems. The record was a mess, and in spite of a valiant effort of counsel and the trial court to piece it together, it left much to be desired. Because so much of the analysis on the sufficiency of the evidence, the prosecutor's statement in closing argument, and the many references to other matters throughout the trial are so pivotal, this faulty record does not provide the foundation necessary to render due process to the defendant in this appeal. For many of the reasons stated in the district court's opinion under the heading "Inaccurate and Unreliable Transcript," *Ben-Yisrayl*, 277 F. Supp. 2d at 905-07, I concur with this court that the district court's grant of Ben-Yisrayl's petition for a writ of habeas corpus should be affirmed.

A true Copy:

     Teste:

                         _____
                         *Clerk of the United States Court of*
                             *Appeals for the Seventh Circuit*