In the

# United States Court of Appeals
## For the Seventh Circuit

No. 06-4232

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

SAMUEL H. JUMPER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 05 CR 30174—**G. Patrick Murphy**, *Chief Judge*.

ARGUED MAY 25, 2007—DECIDED AUGUST 13, 2007

Before BAUER, CUDAHY, and FLAUM, *Circuit Judges*.

CUDAHY, *Circuit Judge*. The defendant, Samuel Jumper, appeals his conviction of conspiracy to distribute and possession with intent to distribute marijuana. Jumper offers two grounds for reversal both of which concern the district court's denial of his motion *in limine* to exclude portions of the defendant's videotaped interrogation from evidence. Namely, Jumper argues that the district court erred in admitting the videotaped interrogation in its entirety because it contains (1) three questions which the defendant refused to answer thereby invoking his Fifth Amendment right to remain silent and (2) various comments by the interrogating FBI agent which called into question the defendant's veracity. We find error as

to the first ground claimed by the defendant but not as to the second. Regardless, we find the error harmless and therefore affirm the conviction.

## I. Background

The defendant, Samuel H. Jumper, was charged with one count of conspiracy to distribute and possession with intent to distribute marijuana pursuant to 21 U.S.C. § 846 and one count of possession with intent to distribute marijuana pursuant to 21 U.S.C. § 841(a)(1). The defendant was found guilty by jury verdicts of both counts and was sentenced to 188 months' imprisonment.

This appeal concerns the admission of a videotape of Jumper's post-arrest, custodial interrogation on October 9, 2005. Earlier that same day, Jumper and two other individuals were arrested by Drug Enforcement Agents after twenty-two boxes on a tractor-trailer which the three individuals were unloading were found to contain marijuana. Before beginning the interrogation, Drug Enforcement Agent Eric Zaber informed Jumper of his rights:

> Before we ask you any questions you must understand you have rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions or have him or her with you during questioning. If you can not [sic] afford a lawyer, one will be appointed to you before any questions if you wish. If you decide to answer questions now without a lawyer present you will have the right to stop answering at any time. You also have the right to stop answering at any time until you have a lawyer. So basically it says on there, like I was telling you, [i]f there's some questions you don't want to answer you can just bypass, I don't want to answer that one.

(Government's Ex. 5A at 1.)

During the interview, on three separate occasions, Jumper indicated that he did not want to answer a certain question. The first instance involved Agent Zaber's questioning of the delivery arrangement:

> [Eric Zaber]: But, you call him up and what does he tell ya[?] What do you tell him[?] What's this conversation like?
>
> [Samuel Jumper]: I just call[ed] him up[,] told him I was in Troy at the truck stop.
>
> EZ: O.[K].
>
> SJ: Told him what exit I was at and he told me he would send his a, send one of his guys up. So that's what they did.
>
> EZ: To get the pipe fittings[?]
>
> SJ: Yes.
>
> EZ: Does that seem unusual?
>
> SJ: No not really, I, I mean, I just not gonna, I don't wanna answer that.

(*Id.* at 5.) The second instance of reluctance to answer involved a previous incident when a trailer owned by the defendant had been stopped with marijuana in it:

> EZ: Um, did you have a tractor trailer or trailer that you own that was stop[ped] with some marijuana in it?
>
> SJ: I had a trailer of mine.
>
> EZ: A trailer[?]
>
> SJ: Yes, yes.
>
> EZ: Who was driving that?
>
> SJ: I'd rather not say.
>
> EZ: Larry Nunley?
>
> SJ: I'd rather not say.

> EZ: O.[K].
>
> SJ: Because like I said, I don't know what he was into . . .
>
> EZ: Well, that makes two of us . . .
>
> SJ: I don't want to get into it . . .

(*Id.* at 11-12.) The third and final instance occurred when Agent Zaber was questioning Jumper about transporting illegal money:

> EZ: . . . [W]hat kind of people use truck drivers to run money, you['ve] been a truck driver for sixteen years. What kind of people use truck drivers to run money[?]
>
> SJ: Depends on what kind of money they['re] runnin[g].
>
> EZ: Illegitimate money. Money that they don't want to be found. What kind of, what kind of people[?]
>
> SJ: I don't know. Rather not answer that.
>
> EZ: So you've been a truck driver for sixteen years, and you have no idea, the kind of people that would . . .
>
> SJ: I'm not even gonna answer that, cause like I say then if they answer, then you incriminate yourself, then you['re] taken to a . . . use that against me in the court of law again.

(*Id.* at 20.)

   During the interview, Agent Zaber also made comments indicating that he believed that Jumper was lying:

> SJ: Because, I'm not gonna tell you no lie.
>
> EZ: Well, I, I don't think that part is true, but . . .

(*Id.* at 13.)

> SJ: I wouldn't lie to you there.

EZ: Well, I think you have lied to us earlier already.

. . .

EZ: Pulling those words back. You say em and you['re] very quick to catch em. But you, once they . . . come out you can't pull it back . . . .

(*Id.* at 19.) Jumper also cites in his brief other comments made by Agent Zaber concerning Jumper's truthfulness or credibility.

Prior to trial, the defendant filed a motion in *limine* to exclude portions of the videotaped statement from evidence on two different grounds. First, the defendant argued that he exercised "his Fifth Amendment right not to answer a question or series of questions" in the three instances previously cited. (R. 93 at 1.) Second, the defendant argued that "[a]t several points in the interview, the Agent expresses his personal opinion about the credibility of Defendant's answers, or argues with the Defendant, or discusses potential further cooperation with the Defendant."[1] (*Id.* at 2.) In its response to the motion, the Government argued that the right to remain silent only attaches "where a defendant has maintained complete silence." (R. 94 at 2.) As for the portions of the interview where Agent Zaber questions the defendant's credibility, the Government argued that the defendant failed to cite any cases in support of his argument that the probative force of the agent's statements are outweighed by their prejudicial effect. (*Id.*) The district court denied the motion without opinion. (R. 95.)

---

[1] On appeal, the defendant only raises concerns with the portions of the tape in which Agent Zaber offers his personal opinion about the credibility of Jumper's answers.

## II. Discussion

### A. Standard of Review

Before turning to the merits of the appeal, we must first resolve the appropriate standard of review. We review a district court's ruling as to the admission or exclusion of evidence for abuse of discretion. *United States v. Wilson*, 307 F.3d 596, 599 (7th Cir. 2002). Whether an evidentiary ruling had the effect of infringing a defendant's constitutional rights is a question of law which is reviewed de novo. *Id.* If we find a constitutional error in an evidentiary ruling, we reverse unless the error is harmless. *Chapman v. California*, 386 U.S. 18, 22 (1967); *United States v. Wick*, 416 F.2d 61, 62 (7th Cir. 1969). An error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1052 (7th Cir. 2005) (quoting *Chapman*, 386 U.S. at 24) (quotation marks omitted).

The Government argues that the defendant failed to make a proper objection at trial, and therefore we should review the admission of evidence for plain error instead of for abuse of discretion. This argument lacks any merit. The defendant had filed a motion *in limine* to exclude portions of the defendant's videotaped statement. (R. 93.) The motion raised the same concerns raised in the present appeal. The district court denied the motion on the record, thus preserving the issue for appeal. *See* Fed. R. of Evidence 103 ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). If that were not enough, prior to Agent Zaber's testimony, the defendant's counsel also had the following exchange with the court:

> MR. JENKINS: Your Honor, simply for the record, prior to Mr. Zaber's testimony, and I believe as a part

> of his testimony, the government will move to add . . . in videotape. For the record, I filed a motion in limine to exclude portions of the videotape prior to trial and the Court has ruled on that. For purposes of the record, if I could simply incorporate that objection before it is played so that it would be a part of the trial record, I'd appreciate it.
>
> THE COURT: All right. I think you preserved the point.

(Tr. Vol. 2 at 3.) The defendant made a timely objection stating the specific grounds that he now raises in the present appeal, therefore we review for abuse of discretion the district court's decision to deny the motion *in limine*, allowing the videotaped interrogation to be admitted in its entirety.

**B. Right to Remain Silent as to Selective Questions**

We now turn to the portions of the videotaped interrogation where the defendant refused to answer Agent Zaber's questions. "[T]he Fifth Amendment, in its direct application to the Federal Government and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965); *see also Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966); *United States v. Nielson*, 392 F.2d 849, 851-52 (7th Cir. 1968). This rule is grounded in a concern that the jury may draw prejudicial inferences from the defendant's silence. *Nielson*, 392 F.2d at 852. The issue in the present case is whether this rule applies only when a defendant has invoked the right to remain silent as to *all* further questions thereby terminating the interview or whether it also precludes any comment at trial about the defen-

dant's invocation of the right to remain silent as to *selective* questions. This, of course, begs the question whether a defendant has the right to remain silent as to specific or selective questions.

We have previously held that the right to remain silent, in a custodial interrogation, attaches to a defendant's refusal to answer a specific question, and therefore the Government may not comment on the defendant's refusal to answer a specific question at trial. In *United States v. Wick*, 416 F.2d 61, 62 (7th Cir. 1969), we held that it was error to introduce an FBI agent's testimony that a defendant during a post-arrest, custodial interrogation refused to answer questions about where he obtained certain counterfeit notes.[2] Further, a number of our sister circuits have also considered this question. The First, Fourth and Sixth Circuits have all held that the right to be silent applies to a defendant's refusal to answer selective questions. *See Greico v. Hall*, 641 F.2d 1029, 1034 (1st Cir. 1981) ("Miranda protections apply equally to refusals to answer *specific* questions.") (emphasis added); *United States v. Williams*, 665 F.2d 107, 109 (6th Cir. 1981) (holding that the admission of an FBI agent's testimony that the defendant "answered some questions but then refused to say how much and in what manner he paid for the vehicle and from whom he purchased it" constituted plain error); *United States v. Ghiz*, 491 F.2d 599, 600 (4th Cir. 1974) ("[I]n declining to answer certain questions, a criminal accused invokes his fifth amendment privilege or in any other manner indicates he is relying on his understanding of the Miranda warning, evidence of his silence or of his silence to answer *specific* questions is inadmissible.") (emphasis added).

---

[2] In *Wick*, as in the present case, we also found the error to be harmless. 416 F.2d at 62.

In response, the Government primarily relies on *United States v. Davenport*, 929 F.2d 1169 (7th Cir. 1991), in support of its argument that "if a defendant starts down an exculpatory path by providing statements and then clams up and refuses to expand on those statements, the latter silence may be introduced at trial." (Government's Br. at 23 (citing *Davenport*, 929 F.2d at 1174).) *Davenport* involved a non-custodial interview by IRS agents. The court explained: "[The IRS agent] gave [the defendant] the option not to answer his questions and it is arguable that when she declined it, all bets were off; that no understanding was violated when he testified to the full range of her answers, including refusals to answer." 929 F.2d at 1175. But, our holding in *Davenport* was entirely dependant on the fact that the interrogation in question in that case was noncustodial. The opinion repeatedly makes note of this fact. *See id.* at 1174 ("As they were not in custody, there was no implicit threat if they kept mum."); *id.* ("As in this case, there was no implicit threat based on a custodial situation."); *id.* at 1175 ("[O]utside the coercive setting of a custodial interrogation, willingness to answer some questions can properly be given greater weight in deciding whether that willingness should forfeit the right to object to comment on a refusal to answer a particular question."). *Davenport* is therefore distinguishable from the present case since Jumper's interrogation occurred post-arrest, while in custody.[3]

---

[3] In *United States v. Bonner*, 302 F.3d 776, 783-74 (7th Cir. 2002), we followed the rule defined in *Davenport* and held that the admission of testimony about the defendant's silence during a noncustodial interrogation was not in error. In *Bonner*, the court hinted that the custodial / noncustodial distinction might be of no import. *Id.* at 783 ("The government suggests we need not consider Bonner's argument for the simple reason that he

(continued...)

Further, the rule in *Davenport* is rooted, at least in part, in a concern that the interrogated individual will somehow attempt to exploit this right to silence as to specific questions at trial. "The privilege against self-incrimination is not a privilege to attempt to gain an advantage in the criminal process . . . ." *Davenport*, 929 F.2d at 1174. *See also United States v. Bonner*, 302 F.3d 776, 784 (7th Cir. 2002) ("[T]he law does not provide a sword by which the defendant may selectively testify as to the merits of his prosecution, yet shield himself from comment on his failure to explain incriminating evidence properly admitted prior to his testimony.") (quoting *McGahee v. Massey*, 667 F.2d 1357, 1364 (11th Cir. 1982)) (alteration in original). But, that concern in not at issue in the present case. Here, the defendant did not testify on his own behalf. The tape was not entered into evidence for impeachment purposes, but rather, as part of the Government's case-in-chief.

There may be instances where a defendant chooses, for whatever reason, not to provide additional details, but at the same time, does not invoke his or her right to remain silent. *See United States v. Pitre*, 960 F.2d 1112, 1126 (2d Cir. 1992); *United States v. Goldman*, 563 F.2d 501, 502-04 (1st Cir. 1977). To be clear, in order for a defendant to have a right to remain silent as to a specific or selective question (and the corresponding right that the prosecution will not comment on this silence), the defendant must indicate in some manner that he is invoking that right.

---

[3]  (...continued)
was not yet 'in custody' during his encounter with Agent Penton; we prefer, however not to resolve that point, since it is clear in any event that there was nothing wrong with the reference to Bonner's selective silence."). Since the court in *Davenport* placed significant emphasis on the fact that the defendant was not in custody during the interrogation in question, we decline now to explore this question posed in *Bonner*.

However, "a suspect need not rely on talismanic phrases or any special combination of words to invoke the right to silence." *Bobo v. Kolb*, 969 F.2d 391, 396 (7th Cir. 1992) (quotation marks and citations omitted). At the same time, silence itself may not be enough to invoke a right to silence. *See Pitre*, 960 F.2d at 1125 (holding the Government was entitled to introduce evidence of the defendant's refusal to answer a question—"He basically looked at the floor and looked at the ceiling."—since the defendant waived his right to remain silent under *Miranda* and failed to "resurrect" it by asserting it thereafter).

In the present case, at least with respect to the first and third instances cited by the defendant, Jumper invoked his right to remain silent by using the very words provided to him by Agent Zaber in explaining the *Miranda* warning. Recall Agent Zaber specifically instructed Jumper that "[i]f there's some questions you don't want to answer you can just bypass, I don't want to answer that one."[4] (Government's Ex. 5A at 1.) In the first instance in which Jumper claims he invoked his right to remain

---

[4] Even if we were to hold that a defendant does not have a right to remain silent as to specific or selective questions, the admission of the tape in its entirety would still be suspect in light of Agent Zaber's warning. In advising Jumper of his rights, Agent Zaber told Jumper that he did have a right to remain silent as to specific questions. "If there's some questions you don't want to answer you can just bypass, I don't want to answer that one." (Government Ex. 5A at 1.) The argument could be made that Jumper did not knowingly waive his rights due to the agent's description of them. *See Moran v. Burbine*, 475 U.S. 412, 421 (1986) ("[T]he waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."); *but see Duckworth v. Eagan*, 492 U.S. 195, 200-01 (1989) (plurality opinion) (holding that informing a suspect that an attorney would be appointed "if and when you go to court" does not render *Miranda* warnings inadequate).

silent, he specifically stated, "I don't want to answer that." In the third instance, he said, "Rather not answer that," and "I'm not even gonna answer that." The second instance is not as clear since Jumper simply stated that he did not want to provide a name. This refusal could reasonably be viewed as a refusal to give a detail rather than an invocation of his right to remain silent. But, with regard to the last instance, Jumper went so far as to quote the *Miranda* warning virtually verbatim in invoking his right. Clearly by this point, Jumper had invoked his right to remain silent, and the Government should not have been allowed to submit that portion of the videotape into evidence. We find that the district court abused its discretion in allowing into evidence the portions of the videotaped interrogation where the defendant invoked his right to remain silent by stating that he did not want to answer the question.

Finding error, we now turn to whether this error is harmless since we will only reverse a conviction if the error is not harmless. An error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Ben-Yisrayl v. Davis*, 431 F.3d 1043, 1052 (7th Cir. 2005). In *Phelps v. Duckworth*, 772 F.2d 1410 (7th Cir. 1985) (en banc), we delineated the following factors to consider in determining whether an impermissible prosecutorial comment regarding post-arrest silence requires reversal:

1. The use to which the prosecution puts the post-arrest silence.

2. Who elected to pursue the line of questioning.

3. The quantum of other evidence indicative of guilt.

4. The intensity and frequency of the reference.

5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.

772 F.2d at 1413; *see also United States v. Massey*, 687 F.2d 1348, 1353 (10th Cir. 1982); *Williams v. Zahradnick*, 632 F.2d 353, 361-62 (4th Cir. 1980).

The Government elected to admit the videotaped interrogation in its entirety as part of its case-in-chief against the defendant. This fact cuts in favor of finding that the error was not harmless. However, outside of the admission of the tape in its entirety, there was no reference to Jumper's statements that he did not want to answer a question. In no way did the Government highlight these portions of the videotaped interrogation. Specifically, Agent Zaber was not asked to testify about Jumper's refusal to answer certain questions. Lastly, and most importantly, there is significant evidence of Jumper's guilt in the record.[5] In brief, Officer Huskey, on patrol the night of October 9, 2005, testified that he discovered the defendant and two co-defendants in a parking lot at 1:00 in the morning unloading three boxes from a tractor-trailer into a van. (Tr. Vol. 3 at 7-8.) These three boxes and the twenty-two additional boxes and three duffle bags still in the trailer together contained more than 1000 kilograms of marijuana. (R. 89.) According to Officer Huskey, the defendant told him that the three boxes which had been moved to the van contained "dirty socks," explaining that he had been on the road for a long time. (Tr. Vol. 3 at 11.) Officer Warren testified that Jumper told him about picking up "pot" only to recant once he realized he had let the word "pot" slip out and insisted that he said "pipe fittings" instead. (Tr. Vol. 4 at 5.) A total of twelve cell phones and $14,000 in cash were confiscated. (Tr. Vol. 2 at 29, 53.) Edgar Kelly (one of the co-defendants who

---

[5] Given the weight of evidence against Jumper, why the Government simply did not exclude voluntarily the inadmissible portions of the videotape escapes us.

cooperated with the police and plea bargained) testified that Jumper had hired him to drive with him from Phoenix to deliver the marijuana. (Tr. Vol. 1. at 24-25.) Kelly further testified that he had once before received an assignment to drive drugs from Jumper. (*Id.* at 21.) Throughout the drive involved here, according to Kelly, Jumper repeatedly called the person who was to receive the marijuana delivery. (*Id.* at 31.) Ignoring the portions of the videotaped interrogation where Jumper invokes his right to remain silent, we find Jumper's answers to be vague and his claim that he did not know what was in the boxes entirely unconvincing. At best, Jumper's trial counsel managed to raise some questions about whether Jumper was in charge, as Kelly testified, or whether Kelly was the leader. Regardless, this question does not impact Jumper's guilt under either charge. In light of the significant evidence of Jumper's guilt, we find "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Ben-Yisrayl*, 431 F.3d at 1052.

## C. Prejudicial Effect of Comments Concerning Defendant's Credibility

We now turn to the second ground offered by the defendant for reversal—that the district court erred in admitting the portions of the videotaped interrogation wherein Agent Zaber comments on the defendant's truthfulness. The defendant argues that Agent Zaber's comments on the defendant's veracity, namely, telling Jumper that he thought he was lying, should have been excluded since their prejudicial effect outweighs any probative value, pursuant to Federal Rule of Evidence 403. Either as support for a finding of prejudice or as a second ground for reversal, the defendant cites cases from the Sixth and Ninth Circuits where the court has held that an officer's

opinion regarding the guilt or innocence of the defendant cannot be admitted because these comments affect the trial's fundamental fairness and invade the province of the jury. (Defendant's Opening Br. at 20-21 (citing *United States v. Harber*, 53 F.3d 236 (9th Cir. 1995); *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988); *United States v. Scop*, 846 F.2d 135, 142 (6th Cir. 1988)).)

Although the question of veracity may go to the ultimate question of guilt or innocence, these issues are not the same, and Agent Zaber did not directly comment on Jumper's guilt. Therefore, the authority offered from our sister circuits is not on point. Moreover, Agent Zaber's videotaped comments are not testimony under oath;[6] the jury could reasonably have viewed these comments as a strategic interrogating tactic of the agent. Since the defendant does not offer any other ground for a finding that the prejudicial force outweighs the probative value, we hold that the district court did not abuse its discretion in admitting the portions of the videotaped interrogation where Agent Zaber questions the defendant's veracity. Regardless, as explained above, any error would have been harmless.

## III. Conclusion

For the foregoing reasons, we AFFIRM the defendant's conviction.

---

[6] It appears the district court made such a distinction. Relying on Federal Rule of Evidence 704, which forbids an expert witness from testifying as to the "whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto," the district court did not allow Agent Zaber to testify as to Jumper's truthfulness, but the court did allow Agent Zaber's videotaped comments into evidence. (Tr. Vol. 2 at 4-5.)

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*